UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN MICHEL MECHIN, | CIVIL ACTION NO.: 2:07cv05824 (GEB)(ES) |
| Plaintiff, | |
| vs. | |
| CARQUEST CORPORATION, CARQUEST PRODUCTS, INC.; TMC ENTERPRISES; VOLTEC INDUSTRIES; TASCO; BWP DISTRIBUTORS, INC.; and ABC CORPORATIONS 1-10 (said names presently unknown and factitious), | CIVIL ACTION |
| Defendants, | |

DEFENDANTS, TASCO AND TMC ENTERPRISES' BRIEF IN REPLY TO
PLAINTIFF'S OPPOSITION TO TASCO AND TMC ENTERPRISES'
MOTION FOR LEAVE TO FILE A THIRD-PARTY COMPLAINT AGAINST
BRIDGESTONE RETAIL OPERATIONS, LLC AND
TMC ELECTRICAL PRODUCTS (SHENZHEN) CO. LTD.
PURSUANT TO FED. R. CIV. P. 14(a)

Motion Date: May 17, 2010

Oral Argument is Requested pursuant to L.Civ.R. 78.1

LITCHFIELD CAVO LLP
*An Illinois Limited Liability Partnership*
John D. Shea, Esquire
Jennifer L. Stratis, Esquire
1800 Chapel Avenue West, Suite 360
Cherry Hill, New Jersey 08002
(856)-854-3636
Attorneys for Defendants, Tasco and TMC Enterprises

TABLE OF CONTENTS

PAGE

INTRODUCTORY STATEMENT..........................................1

LEGAL ARGUMENT..................................................1

    I.   DEFENDANTS DID NOT DELAY IN COMPLETING DISCOVERY
        OR IN FILING THEIR MOTION............................1

    II.  THE CLAIMS AGAINST FIRESTONE ARE NOT FUTILE..........7

    III. DEFENDANTS SHOULD BE PERMITTED TO BRING
        A THIRD-PARTY COMPLAINT AGAINST TMC ELECTRICAL......13

CONCLUSION.....................................................15

**TABLE OF AUTHORITIES**

**CASES**

                                                **PAGE**

Cogdell by Cogdell v. Hospital Center at Orange,
    116 N.J. 7, 15, 21-22 (N.J. 1989) ................. 6, 7

Fisher v. Sears, Roebuck & Co.,
    363 N.J. Super 457, 466, 469-470
    (App. Div. 2003) .............................. 11, 12

Harley Davidson Motor Co., Inc. v. Advance
Die Casting, Inc.,
    150 N.J. 489, 496-97, 502 (1997) ................ 6, 7

Laidlow v. Hariton Mach. Co., Inc.,
    170 N.J. 469-470, 02, 619, 622-623 (2002) .......... 12

Ronson v. Talesnick,
    33 F. Supp.2d 347, 356 (D.N.J. 1999) ................ 1

**STATUTES AND REGULATIONS**

N.J.S.A. 2A:58C-1 ...................................... 13

**RULES**

Fed. R. Civ. P. 16(b)(3)(A) ............................. 1

## INTRODUCTORY STATEMENT

Plaintiff has failed to demonstrate that the instant Motion was untimely, that the joinder of these parties would delay or complicate the issues at trial, or that he would be prejudiced by the joinder of Firestone and TMC Electrical. <u>Ronson v. Talesnick</u>, 33 F.Supp.2d 347, 356 (D.N.J. 1999) (citations omitted). As a result, it is respectfully submitted that Defendants' Motion should be granted.

## LEGAL ARGUMENT

I. **DEFENDANTS DID NOT DELAY IN COMPLETING DISCOVERY OR IN FILING THEIR MOTION.**

<u>Fed.R.Civ.P.</u> 16(b)(3)(A) mandates that scheduling orders include a deadline for motions to join new parties. Such a time period gives parties fair notice of the closing window for joinder of new parties so that they may act accordingly. Here, the Fifth Amended Scheduling Order set the deadline for the joinder of claims at April 12, 2010. Defendants filed their Motion in accordance with that deadline. Notably, Plaintiff never objected to this deadline, or the structure of the Court's previous Scheduling Orders setting a deadline for the joinder of parties towards the close of fact discovery. Plaintiff has failed to cite to any New Jersey Federal Court decision wherein a Court has denied a Motion for Leave to File a Third-Party

1

Complaint when that motion had been filed in accordance with the Scheduling Order in effect for the case.

Notwithstanding the April 12, 2010 deadline, Plaintiff has alleged, without any factual basis, that the Motion should be denied because Defendants delayed the completion of factual discovery and, therefore, delayed the filing of this motion. On or about December 5, 2007, Plaintiff filed a Complaint against Carquest Corporation only. He did not amend his Complaint to include Tasco and TMC Enterprises as Defendants until April 3, 2008. From between July 3, 2008, when Tasco and TMC's Answer was filed, and the present, written discovery has been completed and fifteen depositions have been conducted.[1]

Plaintiff contends Tasco and TMC delayed in initiating the depositions of the Firestone fact witnesses. However, these depositions could not be scheduled until the Occupational Safety and Health Administration ("OSHA") responded to the Freedom of Information Act request served by Tasco and TMC, as the OSHA file contained additional witness statements from most of the Firestone witnesses. To avoid the necessity of re-deposing the Firestone witnesses, defense counsel made numerous attempts to obtain the investigative file from OSHA by sending approximately

---

[1] It has previously been brought to the Court's attention that complex contractual defense and indemnification issues between the non-moving Defendants resulted in the transition of the defense for three Defendants during 2009, which resulted in a several month delay in the completion of written discovery.

2

thirteen letters to OSHA and speaking to representatives of OSHA on more than five occasions. OSHA did not produce the records until approximately five months after the initial Freedom of Information Act request was sent to them.[2]

Due to OSHA's continued delay in producing its file, defense counsel determined they had to proceed with the depositions of the Firestone employees before obtaining the complete OSHA file, and did so while reserving the right to re-depose those witnesses if additional information within those witnesses' knowledge was discovered after receipt of this file. The depositions of the Firestone witnesses were scheduled and completed as expeditiously as possible in light of the complexity of the legal issues between the co-defendants, the number of attorneys involved in this case and the difficulty in obtaining the file from OSHA.

It should be noted that Plaintiff's counsel previously wrote to this Honorable Court, stating that the depositions of the Firestone witnesses were "absolutely essential to the prosecution of this matter" and that Firestone employee, "Mr. Stefanak's testimony is crucial." (See March 22, 2010 Letter from Plaintiff's Counsel to Honorable Esther Salas, U.S.M.J., Exhibit A). On the one hand, Plaintiff contends that *Defendants*

---

[2] In fact, OSHA did not produce these records until a deposition subpoena was served upon an OSHA representative.

3

delayed discovery, while at the same time he admits that he needed the same discovery that *Defendants* pursued. *Defense counsel* subpoenaed each of the five depositions of the Firestone witnesses taken to date, as well as three additional depositions for which Firestone failed to produce witnesses. Although Plaintiff claims that Defendants waited fifteen months to take the depositions of the Firestone witnesses, additional discovery was being conducted during that fifteen-month-period. More importantly, although the depositions of the Firestone employees were "absolutely essential to the prosecution" of Plaintiff's case, Plaintiff's counsel himself never subpoenaed any of these depositions.

Furthermore, and most important, although Plaintiff would like this Court to believe that for fifteen months Defendants were in possession of the information that was revealed at the depositions of the Firestone witnesses - specifically William McWalters's March 16, 2010 testimony regarding the fact that the hydraulic portion of the stand Plaintiff was using on the date of the accident had been removed by Firestone employees - this is simply untrue. The erroneousness of this statement is underscored by Plaintiff's failure to cite to any portion of the record demonstrating Defendants' awareness of this fact. Contrary to Plaintiff's representation to the Court, the instant Motion was filed as soon as it became clear, through Mr.

4

McWalters's deposition testimony, that a <u>Laidlow</u> claim against Plaintiff's employer, Firestone, was warranted.

It is respectfully submitted that the joinder of TMC Electrical and Firestone would neither unduly delay this matter nor prejudice Plaintiff. Although Plaintiff claims that counsel for Firestone informed him that he intends to re-depose many of the fifteen witnesses, counsel for Firestone certified in his Motion to Quash that he had "not been privy" to the depositions taken in this matter, other than those of the Firestone witnesses.[3] As such, without even reviewing any transcripts, Firestone's counsel certainly cannot state at this point whether or not he intends to re-depose the witnesses. Moreover, competent and well-prepared attorneys have conducted thorough depositions of the witnesses; therefore, it is unlikely that TMC Electrical or Firestone will find it necessary to re-depose them.

There is no support for Plaintiff's vague contention that the joinder of these parties would require two separate trials. To the contrary, Firestone and TMC Electrical would be present at the same trial as the underlying defendants and they would simply be additional defendants on the verdict sheet. The

---

[3] Furthermore, out of the fifteen witnesses who have been deposed in connection with this case, five of the depositions were taken of former or current employees of Firestone. Firestone's counsel was present at those depositions.

joinder of all parties to the same action would make procedural sense and avoid circuity of action. <u>Cogdell by Cogdell v. Hospital Center at Orange</u>, 116 N.J. 7, 21-22 (N.J. 1989).

Finally, although Plaintiff has claimed that <u>Harley Davidson Motor Co., Inc. v. Advance Die Casting, Inc.</u>, 150 N.J. 489, 502 (1997) stands for the proposition that Defendants "would still have a right to file a separate action for indemnification and contribution against" TMC Electrical and Firestone, Plaintiff's reliance on this case is misplaced. The <u>Harley Davidson</u> Court specifically held that it did "not exclude as a class all third-party claims for indemnity from the reach of the entire controversy doctrine." <u>Id.</u> at 502. Furthermore, the Supreme Court of New Jersey specifically held that:

> in a products liability action, a claim for common-law indemnification from a third party should ordinarily be joined in the original action because of related issues of contribution.

<u>Id.</u>  The Court's rationale rested on the objectives of the entire controversy doctrine, including: (1) the encouragement of the comprehensive and conclusive determination of a legal controversy; (2) the achievement of party fairness, including both parties before the court as well as prospective parties; and (3) the promotion of judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." <u>Id.</u> at 496-97 (citation omitted). The entire controversy doctrine

strives to further these objectives by requiring that, whenever possible, "the adjudication of a legal controversy should occur in one litigation in only one court." Id. (citing Cogdell, supra, 116 N.J. at 15). Here, the entire controversy doctrine supports the joinder of TMC Electrical and Firestone to this action, and to preclude these parties would contravene all interests of justice and fairness and force this case to be tried without all culpable parties before the jury.

## II. THE CLAIMS AGAINST FIRESTONE ARE NOT FUTILE.

As demonstrated in Defendants' moving papers, there has been sufficient evidence to warrant an action being brought against Plaintiff's employer, Firestone. Although Plaintiff has painted the subject accident as an isolated event that had no connection to Firestone's prior egregious actions, including, but not limited to, its failure to properly train and supervise its employees, its failure to provide its employees with the proper equipment to be used in connection with a fuel pump replacement job, its intentional removal of a hydraulic safety device and its utter disregard for the safety of its employees when they worked with gasoline in an automotive garage, these actions, taken together with William McWalters's actions on the date of the accident, made it substantially certain that this accident would occur. Firestone's complete disregard for its employees is aptly demonstrated by the fact that, while gasoline

7

was being siphoned from the unrestrained three-quarters full gas tank on the stand, Mr. McWalters, the "go-to guy" in the shop, was outside the bays, leaving Plaintiff by himself to balance a teetering gas tank on the stand.

Plaintiff has claimed that the removal of the hydraulic system has no relevance to the happening of the subject accident. Conversely, the removal of this hydraulic device directly relates to how the accident occurred. Former Firestone employee, Garry Gainey, specifically testified that he saw the tank "teetering" on the stand and Plaintiff kneeling down trying to catch the tank. Then, Mr. Gainey saw Plaintiff grab the hose and gas pour over him. Shortly thereafter, everything suddenly "went up in fire." (See Gainey's Transcript, attached to Moving Papers as Exhibit D, 114:10-115:8; 116:19-117:1; 117:22-118:1; 126:14-127:17; 128:7-19; 129:2-17). A hydraulic transmission stand could have safely raised and lowered the gas tank to and from the van and allowed the tank to safely rest on the stand. Incredibly, within a few weeks after the incident, Firestone provided its employees with the proper equipment to be used when replacing a fuel pump, including a new hydraulic transmission stand and a separate gas caddy. Due to Mr. McWalters' intentional removal of the hydraulic system, 1994 was the last time that Firestone had a hydraulic gas stand in the Denville Firestone shop.

8

A jury should be permitted to consider whether gas would have spilled on Plaintiff if the transmission stand had not been altered and Mr. McWalters had safely secured the tank to the stand. After considering this issue, a jury could find that this accident would not have occurred but for Firestone's intentional removal of the hydraulic system from the transmission stand.

In addition, further information supporting Defendants' third-party claim against Firestone may be discovered after the depositions of three additional Firestone witnesses are taken and after outstanding subpoenas to Firestone are answered. Defendants have subpoenaed the depositions of Frank Stefanak, the Denville Firestone Service Manager; Joseph Voorhees, the Manager of the Denville Firestone store; and Robert Cartwright, a Bridgestone Retail Operations Loss Prevention Manager.

Although the deposition of Mr. Stefanak was requested by defense counsel in as early as October 2009 and subpoenaed by defense counsel on December 18, 2009, February 19, 2010[4] and April 6, 2010, counsel for Firestone failed to produce Mr. Stefanak for his deposition and did not file a Motion to Quash this subpoena until April 30, 2010, only after the Honorable Esther Salas, U.S.M.J. sent counsel for Firestone an April 22,

---

[4] A snowstorm caused Mr. Stefanak to miss this scheduled deposition.

2010 letter, ordering Firestone to comply with the subpoena or move to quash the subpoena by April 30, 2010. (See October 26, 2009 Letter to Firestone's Counsel, Exhibit B; Deposition Subpoenas to Frank Stefanak, Exhibit C). Firestone's Motion to Quash the aforementioned subpoenas is returnable on June 7, 2010 and defense counsel intends to oppose this motion.[5]

Mr. Voorhees, Mr. Cartwright and Mr. Stefanak are likely to have greater knowledge of specific facts relevant to a Laidlow claim against Firestone than any of the Firestone witnesses whose depositions have been taken to date. Mr. Voorhees and Mr. Stefanak, who managed the Denville Firestone, are the individuals most likely to be aware of Firestone's practices and procedures for this type of task as well as the necessary and required equipment to safely perform that task. In addition, Mr. Cartwright is the Bridgestone Retail Operations employee who likely is most knowledgeable of the OSHA investigation, Firestone's practices and procedures, prior accidents involving gasoline or the transmission stand, and any accidents caused as a result of the performance of a fuel pump replacement job.

In addition, although Defendants served document subpoenas on Firestone on December 21, 2009; March 17, 2010; April 6, 2010 and April 8, 2010, Firestone has not produced one document in

---

[5] Defense counsel intends to file a Cross-Motion to compel Firestone to respond to the document subpoenas.

response to these subpoenas, objected to the majority of the document requests and claimed that it would produce documents in its possession:

> following and in accordance with the resolution of Defendants' pending motion for leave to file a third-party complaint against BSRO, as required under applicable law, and upon the entry of and subject to an appropriate confidentiality agreement and protective order.

(See Subpoenas to Firestone, Exhibit D, without subpoena exhibits; Firestone's Responses to Subpoenas, Exhibit E). Documents produced by Firestone in response to these subpoenas also may lead to the discovery of additional information bolstering Defendants' third-party claim against them.

Plaintiff has argued that Defendants cannot overcome the workers' compensation bar because, to date, there has been no evidence of (1) prior OSHA citations and intentional misrepresentations to OSHA; (2) the intentional disabling of safety equipment for a profit motive; or (3) prior accidents and injuries involving the same equipment, conditions or procedures. However, Plaintiff has failed to cite to any published New Jersey decision standing for this proposition. In fact, New Jersey's Appellate Division has affirmed the Courts' eschewal of "a *per se* rule in favor of one grounded in the totality of the facts." Fisher v. Sears, Roebuck & Co., 363 N.J. Super. 457, 466 (App. Div. 2003) (citing Laidlow v. Hariton Mach. Co., Inc., 170

N.J. 602, 622-623 (2002)). New Jersey Courts have decided whether an action is sustainable against a plaintiff's employer by conducting a *case-by-case analysis*. Id. (citing Laidlow, supra, 170 N.J. at 619) (emphasis added). "[N]o one fact is dispositive and the ultimate determination as to an intentional wrong "will be grounded in the *totality of the facts* contained in the record." Id. at 469-470 (citing Laidlow, supra, 170 N.J. at 623 (emphasis added).

As the Supreme Court of New Jersey made clear in the Laidlow case, "just as the absence of a prior accident does not preclude a finding of an intentional wrong, neither does an employer's violation of an OSHA regulation establish that fact as a *per se* rule." Id. at 470 (internal citation omitted). The Appellate Division has noted that in each of the cases in which the Court has permitted an action to be brought against a plaintiff's employer:

> although one or more of these factors may have been lacking, nevertheless there was sufficient other evidence considered in the 'substantial certainty' analysis to warrant submission of that issue to the jury and to defeat the summary judgment motion. Id.

Here, the totality of the circumstances, as more fully outlined in Defendants' moving papers, demonstrates that the circumstances are not part and parcel of everyday industrial life. Instead, Firestone's excessive violation of the social contract between Plaintiff and Firestone precludes Firestone

12

from immunization for its actions. Further, the depositions of Mr. Voorhees, Mr. Stefanak and Mr. Cartwright, along with the materials that will be produced by Firestone in response to the subpoenas, may lead to the discovery of additional information in support of this third-party claim.

### III. DEFENDANTS SHOULD BE PERMITTED TO BRING A THIRD-PARTY COMPLAINT AGAINST TMC ELECTRICAL.

Plaintiff has attempted to use its claims against all Defendants both as a sword and a shield. On the one hand, he has brought a claim against TMC Enterprises and Tasco, alleging that the subject Carquest Trouble Light was dangerously defective, unfit and unsafe for its intended and reasonably foreseeable uses and that Defendants should be held strictly liable in tort for their wrongful conduct pursuant to the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. 2A:58C-1, et seq. Plaintiff has specifically alleged that, as a direct and proximate result of the *defective design, manufacturing,* testing, advertising, promoting, distributing, marketing, supplying, inspecting and/or sale of the Carquest Trouble Light by Defendants, Plaintiff has sustained damages.

On the other hand, in order to oppose Defendants' Motion to assert third-party claims against TMC Electrical, Plaintiff stated that he "does not allege that the subject light was manufactured defectively" and the "crux of plaintiff's

13

allegations relate to defendants' improper advertising, marketing and selling of the drop light to professional automobile repair facilities like Firestone." (See Plaintiff's Opposition Brief, p. 2).

On or about March 13, 2009, Defendants, TMC and Tasco, served certified Answers to Interrogatories wherein they certified that they "had no involvement in the packaging, distribution, selling, advertising or marketing" of the Trouble Light. (See Tasco and TMC's Answers to Interrogatories, #2, attached to Moving Papers as Exhibit K). Plaintiff has continued suit against TMC Enterprises and Tasco even though it has been clear to Plaintiff since at least as early as March 2009 that these Defendants had no part in the advertising, marketing or selling of the subject drop light to professional automobile repair facilities. In complete contradiction to his continued prosecution of this suit against TMC Enterprises and Tasco, Plaintiff now seeks to oppose Defendants' Motion on the basis that he has made no claim of a manufacturing defect and the original manufacturer of the product, TMC Electrical, has nothing to do with Plaintiff's primary allegation. Without any basis, Plaintiff alleges that TMC Enterprises, the importer of the product who made no changes to the product before selling it to Defendant, Voltec, is somehow liable under the NJPLA, while he contradictorily claims that the manufacturing of the product

14

by TMC Electrical is not relevant to the "crux of plaintiff's allegations."

The fact remains that, in his Amended Complaint, Plaintiff asserted that the subject Trouble Light was defectively designed and manufactured.[6] Contrary to Plaintiff's argument, impleading TMC Electrical into this case will only further the interest of justice and ensure that all parties involved in the manufacturing, designing, testing, formulating, selling, marketing, advertising and distributing of the subject Trouble Light are Defendants in this case.

## CONCLUSION

For the aforementioned reasons and the reasons set forth in Defendants' motion papers, it is respectfully submitted that Defendants' Motion for Leave to File a Third-Party Complaint against Firestone and TMC Electrical should be granted.

Respectfully Submitted,

**LITCHFIELD CAVO LLP**
*An Illinois Limited Liability Partnership*
Attorneys for Defendants, Tasco and TMC Enterprises

By: /s/ John D. Shea                 By: /s/Jennifer L. Stratis
    John D. Shea, Esquire                Jennifer L. Stratis, Esquire

Dated: May 10, 2010

---

[6] If Plaintiff has withdrawn both his manufacturing and design defect claims, Plaintiff should voluntarily dismiss TMC Enterprises and Tasco from this case with prejudice.

15