UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| JEAN MICHAEL MECHIN, | Civil Action 07-5824 (GEB) (ES) |
| Plaintiff, | |
| v. | **OPINION** |
| | August 17, 2010 |
| CARQUEST CORP., et al., | |
| Defendants. | |

**SALAS, UNITED STATES MAGISTRATE JUDGE:**

## I. INTRODUCTION

Pending before this Court is a motion by Defendants Tasco and TMC Enterprises, joined by Defendant Voltec Industries, LLC, to file a third-party complaint against Bridgestone Retail Operations, LLC ("Firestone") and TMC Electrical Products (Shenzhen) Co. Ltd. ("TMC Electrical") pursuant to Fed. R. Civ. Pro. 14(a). (*See generally* Defendants, Tasco and TMC Enterprises' Brief in Support of Motion for Leave to File a Third-Party Complaint ("Def. Brief"), Docket Entry No. 43-2; April 26, 2010 letter from Scott L. Haworth, Docket Entry No. 49). The parties dispute whether Defendants' motion for joinder is timely and whether New Jersey's workers' compensation statute bars the motion to join Firestone. For the reasons set forth below,

1

this Court denies Defendants' motion for leave to file a third-party complaint against Firestone and TMC Electrical.

## II. BACKGROUND

On July 3, 2007, Plaintiff was employed as an automobile mechanic for Firestone Complete Auto Care at its facility in Denville, New Jersey. (First Am. Compl., Docket Entry No. 6, ¶ 12). Plaintiff and co-worker Gary Gainey testified that a more experienced co-worker, William McWalters, asked for Plaintiff's and Mr. Gainey's assistance in removing a fuel pump from a Ford van. (Def. Brief at 6). However, Mr. McWalters testified that he did not ask for Plaintiff's assistance since Plaintiff was "too new." (*Id.*). Due to the fuel pump's location on the vehicle, the gas tank had to be removed to access the fuel pump. (Plaintiff's Brief in Opposition to Defendants Tasco and TMC Enterprises' Motion For Leave To File a Third-Party Complaint ("Pla. Brief") at 4). A "check valve" prohibited the mechanics from draining the fuel in the gas tank before removing it. (*Id.*). The car was first placed on a lift, and then subsequently a "transmission stand" (the "Stand") was placed beneath the vehicle. (*Id*. at 4, 7).

Although Firestone never properly trained Plaintiff in fuel tank removal according to Defendants, he and Mr. Gainey lowered the gas tank onto the Stand, where it remained unsecured and unstrapped. (Def. Brief at 7, 13). The Stand previously supported a hydraulic lift system, but it was removed years before the date of this incident. (Def. Brief at 8-9). In addition, the Stand had wheels without a locking mechanism. (*Id*. at 8). After they placed the tank on the Stand, both Plaintiff and Mr. Gainey returned to their own jobs in other bays in the facility. (Pla. Brief at 4).

Mr. McWalters then began to siphon gas out of the fuel tank into a gas container located

on the floor near the Stand by placing one side of a hose inside the gas tank and the other side of the hose into the gas container. (Def. Brief at 9). For reasons that are still unclear, gasoline began to spill from the gas tank onto the floor below. (Pla. Brief at 4). Alerted to the spill, Plaintiff ran to Mr. McWalters' bay to stop the gasoline from spilling. (*Id.* at 5). As Plaintiff grabbed the tank, he became drenched in gasoline. (*Id.*). The next instant, the spilling gasoline was ignited by a Carquest Professional Duty Trouble Light ("Trouble Light") that had fallen onto the floor. (*Id.*). Plaintiff does not specify how the Trouble Light ignited. Defendants allege that the Trouble Light ignited when the gas tank fell off the Stand and "crushed" it. (Def. Brief at 10). Plaintiff suffered burns to 42% of his body. (First Am. Compl. ¶ 12).

The Occupational Safety and Health Administration ("OSHA") issued two citations to Firestone on August 20, 2007. (Pla. Brief at 5). The first citation refers to a place of employment that was "causing or is likely to cause death or serious physical harm to employees in that employees were exposed to burns due to the ignition of gasoline." (Def. Brief at 17). Ultimately, this citation was withdrawn. (*Id.* at 18, n.5). The second citation noted inadequacies in the training provided by Firestone. (*Id.* at 18). This citation was amended. (*Id.* at 18, n.5).

In the First Amended Complaint, Plaintiff alleges that Defendants (1) are strictly liable in tort under the New Jersey Product Liability Act, N.J.S.A. 2A:58C-1 *et seq.*, because the Trouble Light was unfit for its intended and reasonably foreseeable use in automobile service or repair and should not have marketed for such purpose; and (2) breached their express warranties that the Trouble Light was fit for use in an automobile repair facility. (First Am. Compl. at ¶¶ 13 *et seq.*) Defendants now seek to join Firestone and TMC Electrical as parties to this action.

**A. Defendants' Arguments**

Defendants seek to join as defendants TMC Electrical, the manufacturer of the Trouble Light, and Firestone, Plaintiff's employer, based on information obtained during discovery. (Def. Brief at 3-4). Defendants learned that Firestone employees used the Stand as a place to store their used cigarettes and that employees, including Mr. McWalters, intentionally removed the hydraulic system from the Stand because it was not working. (*Id*. at 8-9). Defendants also obtained testimony that warnings were included in the packaging material as well as on the Trouble Light when it was delivered to Firestone.[1] (*Id*. at 11). However, photographs taken immediately after the accident demonstrate that the warning labels attached below the handle of the Trouble Light were not there. (*Id*.). Firestone allegedly provided no training to employees concerning removal of fuel tanks or how to safely handle gasoline. (*Id*. at 13). Mr. McWalters has also testified that Firestone provided him with no training regarding the use of fire extinguishers, fire safety, or the health effects of gasoline. (*Id*. at 14). Nor did Firestone instruct its employees that the gas tank should be secured to a stand. (*Id*.). Defendants also note that after the accident, Firestone purchased new equipment, including a hydraulic transmission stand and a separate gas caddy, and provided instructions to employees concerning how to properly use such equipment when removing a gas tank. (*Id*. at 15).

    1.    **Defendants Can Satisfy the Requirements of Rule 14(a)**

Defendants argue that their motion is timely because it was filed on April 12, 2010 in accordance with the Sixth Amended Pretrial Scheduling Order's joinder deadline of the same

---

[1] The warning label that Defendants allege Firestone removed from the Trouble Light states: "WARNING/ATTENTION. FIRE HAZARD. CAUTION: DO NOT USE IN THE PROXIMITY OF VEHICLES OR EQUIPMENT, WHEN THERE IS A RISK OF FLAMMABLE LIQUIDS COMING ONTO CONTACT WITH THE HAND LAMP" (Def. Brief at 11).

date. (Docket Entry No. 40). Also, Defendants filed the motion on said date primarily due to the information learned during Mr. McWalters' deposition on March 16, 2010 and Plaintiff's deposition on March 17, 2010. (Def. Brief at 4). Defendants began attempting to schedule depositions of Firestone employees in October 2009. (*Id*.). However, complications arose, and those depositions could not be held until February and March 2010, in part because of OSHA's delayed response to the Freedom of Information Act request served by Defendants. (*Id*. at 24; Defendants Brief in Reply to Plaintiff's Opposition to Defendants' Motion for Leave to File a Third-Party Compl. ("Def. Reply Brief") at 2). Regarding TMC Electrical, Defendants assert that the motion is timely because of the recent decision by the New Jersey Supreme Court in *Nicastro v. McIntyre Machinery America, Ltd*., 201 N.J. 48 (2010), which holds that a foreign manufacturer can be subjected to personal jurisdiction in New Jersey by knowingly placing a product in the stream of commerce with intent for it to be marketed and sold nationally. (*Id*. at 32).

     Defendants next argue that Plaintiff will not be prejudiced by joinder of said parties. (Def. Brief at 25). Defendants contend that joinder will not complicate the issues at trial and "will only ensure that all necessary parties are involved in this action at the time of trial." (*Id*.). Plaintiff was fully aware of the joinder deadline of April 12, 2010 and never objected. (*Id*.). Additionally, "Firestone has had counsel involved in this matter for discovery purposes since the outset of the litigation," and counsel has been present at all depositions of Firestone employees or former employees. (*Id*.). Thus, adding Firestone "as a defendant will not delay the discovery in this case." (*Id*.). Also, pursuant to New Jersey case law, even if named defendants are dismissed with prejudice from this case, if the manufacturer has been joined, that company may still be held

5

liable to Plaintiff, which would benefit Plaintiff. (*Id*. at 26).

## 2. Workers' Compensation Does Not Bar the Claim Against Firestone

Defendants argue that the "intentional wrongs" committed by Firestone permit this Court to pierce the workers' compensation bar pursuant to *Laidlow v. Hariton Mach. Co., Inc.*, 170 N.J. 602 (2002) and subsequent cases. (Def. Brief at 26). The intentional wrongs allegedly committed by Firestone are Firestone's removal of a "safety device" (the hydraulic system from the Stand) and its knowledge of the dangers working with gasoline and failure to institute any procedures for safely removing and storing gas tanks and gasoline held by those gas tanks. (*Id*. at 31). Firestone employees thus had no other choice than to place gas tanks on the transmission stand with (1) wheels that would not lock, (2) old cigarettes on top of it, (3) no straps, and (4) no hydraulic system. (*Id*. at 31-32). Defendants argue that these actions by Firestone demonstrated a "substantial certainty" that injury would result. (*Id*.) Additionally, Defendants argue that Firestone's post remedial actions, such as providing a new hydraulic transmission stand, demonstrate that Firestone fully understood the dangers of the conditions prior to the accident. (*Id*. at 31).

## 3. TMC Electrical is a Necessary and Indispensable Party

Defendants argue that if they can identify the correct manufacturer of the Trouble Light, then they can be granted "product seller immunity" under New Jersey Products Liability Act, N.J.S.A. 2A:58C-9. (Def. Brief. at 36-37). Defendants state that TMC Electrical is the manufacturer. (*Id*. at 38).

### B. Plaintiff's Arguments

#### 1. Defendants Cannot Satisfy the Requirements of Rule 14(a)

Plaintiff argues that Defendants' motion was unduly delayed, although submitted before the Scheduling Order's joinder deadline, because "Defendants have been in possession of all relevant information regarding the product in question and how the incident happened for at least 15 months," and no important new facts were learned during Defendants' recent depositions. (Pla. Brief at 7-8). Plaintiff further argues that Defendants "did not attempt to schedule depositions of any Firestone employees until October 2009, 15 months after they filed their answer." (*Id*.). With respect to TMC Electrical, Plaintiff claims that Defendants have known the identity of the manufacturer from the outset of the litigation. (*Id*. at 8-9). Defendants' reliance upon *Nicastro* to argue that they now can obtain personal jurisdiction over a foreign corporation is unpersuasive because *Nicastro* simply reaffirmed longstanding case law on the "stream of commerce" theory. (*Id*. at 9). *See Charles Gendler & Co. v. Telecom Equip. Corp*., 102 N.J. 460 (1986).

Plaintiff argues that joinder would unduly delay the trial date because it would "require the exchange of new paper discovery and taking depositions of the new defendants' employees." (*Id*. at 10). This extended discovery could take six months or more to complete, and attempting to serve TMC Electrical in China may lead to more than a year delay. (*Id*. at 11). In addition, Plaintiff contends that joining Firestone will complicate the issues and will necessitate having two separate trials - one on the product liability action and the second on whether Firestone's actions surmount the workers' compensation bar. (*Id*.). Finally, Plaintiff states that the heart of his case is the improper marketing of the Trouble Light to automobile care facilities and related

improper warnings. (*See id*. at 12 n.2).

### 2. Claims Against Firestone are Barred by the Workers' Compensation Act

Plaintiff relies on *Millison's* two-prong (conduct and context) test to argue that any claims against Firestone are barred by New Jersey's Workers' Compensation Act. (*Id*. at 15). Plaintiff argues that the conduct prong of the substantial certainty test has not been met because the defendants cannot prove extreme and egregious behavior. (*Id*. at 20). Plaintiff claims that the gas tank was on the Stand when it leaked. (*Id*. at 14). Thus, securing it with straps would not have made a difference. (*Id*.). Nor is the hydraulic system missing from the Stand significant because that simply lowers and raises the gas tank, and the gas did not leak while the employees raised or lowered the tank. (*Id*.). Plaintiff then outlines factors that courts use to determine whether an employer committed an intentional wrong, as required to avoid the workers' compensation bar, and concludes that Firestone's actions were not substantially certain to result in injury or harm to the Plaintiff. (*Id*. at 21). For the same reasons outlined above, Plaintiff contends that the "context" prong of *Millison* is not satisfied. (*Id*. at 23).

### III. ANALYSIS

#### A. Standard For Rule 14 Impleader

Federal Rule of Civil Procedure 14(a) provides:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff

>files the third-party complaint no later than 10 days after serving
>the original answer. Otherwise, the third-party plaintiff must
>obtain leave on motion upon notice to all parties to the action.

Fed. R. Civ. Pro. 14(a). "Joinder of third-party defendants under Rule 14 is not automatic; rather, the decision to permit joinder rests with the sound discretion of the trial court." *Spencer v. Cannon Equip. Co.*, No. 07-2437, 2009 U.S. Dist. Lexis 55370, at *6 (D.N.J. June 29, 2009). The aim of Rule 14(a) is to "prevent a multiplicity of suits arising out of the same factual situation because it permits 'additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit.'" *Hitachi Capital Am. Corp. v. Nussbaum Sales Corp.,* No. 09-731, 2010 U.S. Dist. LEXIS 30562, at *7 (D.N.J. March 30, 2010). "Rule 14 was enacted to promote efficiency, achieve consistent results, and avoid circuitous litigation." *Id*. In *Hitachi*, the Court noted that "[j]oinder of a third party is proper if a defendant's claim presents a theory upon which the third party can be liable to the defendant under some theory of secondary liability." *Id*. at *9-10. The Court further noted that "[s]uch secondary liability exists when the third party would be liable to the defendant under a theory of derivative liability, such as indemnification or contribution, if the defendant is found liable to the plaintiff." *Id.* at *10.

The Third Circuit considers the following equitable factors when exercising its discretion to permit impleader: "(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; and (4) prejudice to the original plaintiff." *Spencer*, 2009 U.S. Dist. Lexis 55370, at *7. The addition of new parties will inevitably delay discovery "in most if not all Rule 14 situations. ...If the inevitable delay and complexity were dispositive

9

considerations, however, few Rule 14(a) motions would be granted.  Such considerations must be weighed against the alternative prospect of two separate trials and the need for attempting to coordinate, and in the end possibly consolidate, the matter for the sake of judicial economy." *Id*. at *13.  The "mere fact of delay" due to the addition of parties does not equate to prejudice to the Plaintiff.  *Id.*, at *12.  Last, Rule 14 "is entitled to liberal construction." *Hitachi*, 2010 U.S. Dist. LEXIS 30562, at *18.

    B.   TMC Electrical

        1. Derivative Liability

In order to find TMC Electrical eligible for joinder under Rule 14, it must be derivatively liable to the Defendants.  Rule 14(a) "no longer permits impleader on the theory that the third party defendants are liable to the original plaintiff." *Remington Arms Co. v. Liberty Mutual Ins. Co.,* 748 F. Supp. 1057, 1068 (D.De. 1990).  The New Jersey Joint Tortfeasors Contribution Act provides a right of contribution when the "injury or damage is suffered by any person as a result of the wrongful act, neglect, or default of joint tortfeasors."  N.J. Stat. Ann. § 2A:53A-3.  The Act defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to person or property." N.J. Stat. Ann. § 2A:53A-1.  Under the Act, "a joint tortfeasor is permitted to recover contribution from another tortfeasor for the excess paid over his pro rata share in satisfaction of a judgment." *Ronson v. Talesnick*, 33 F. Supp. 2d 347, 357 (D.N.J. 1999); *see* N.J. Stat. Ann. § 2A:53A-3.  Further, "joint tortfeasors may be held liable under different theories of recovery." *Erkins v. Case Power & Equip. Co.,* 164 F.R.D. 31, 33 (D.N.J. 1995).

Under the New Jersey Products Liability Act, a seller can qualify for "seller immunity" if the seller can correctly identify the manufacturer and the seller's "exclusive role is to make the finished, packaged, and labeled product available to consumers." *Smith v. Alza Corp.*, 400 N.J. Super. 529, 541 (N.J. Super. Ct. App. Div. 2008); *see* N.J. Stat. Ann. § 2A:58C-9.  However, a product seller is not entitled to immunity if the "product seller has exercised some significant control over the design, manufacture, packaging, or labeling of the product relative to the alleged defect in the product which caused the injury."[2]  N.J. Stat. Ann. § 2A:58C-9(d)(1); *see Cartel Capital Corp. v. Fireco of N.J.*, 81 N.J. 548, 566-67 (1980) (strictly liable defendant manufacturer permitted to recover contribution from negligent defendant distributor); *Smith*, 400 N.J. Super. at 542 (defendant who packaged, labeled, and shipped a product in bulk to distribution centers for ultimate sale did not qualify for "product seller immunity").

Plaintiff's First Amended Complaint alleges that Defendants "manufactured, designed, tested, advertised, marketed, distributed, and/or sold" the Trouble Light at issue.  (First Am. Compl. ¶ 11).  The parties have acknowledged that TMC Electrical is the manufacturer of the Trouble Light.  (*See* Pla. Brief at 8-9).  Defendants allege that TMC Electrical has derivative liability to Defendants as either a joint tortfeasor or because Defendants are entitled to "seller immunity" under the Products Liability Act.  Defendants therefore seek to join TMC Electrical

---

[2]  Manufacturers and product sellers are given the same definition under this Act as they are under the New Jersey Joint Tortfeasors Act.  A manufacturer is "any person who formulates, produces, creates, makes, packages, labels, or constructs any product or component of a product."  *Leja v. Schmidt Mfg. Inc.,* No. 01-5042, 2010 U.S. Dist. LEXIS 32297, at *26-27 (D.N.J. Mar. 31, 2010); *quoting* N.J. Stat. Ann. § 2A:58C-8.  While a product seller is "any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce."  *Id.*

on a proper theory of derivative liability.

### 2. Test for Impleader

#### a. Timeliness of Motion

The first factor that the Third Circuit has set forth to determine whether a court should use its discretion to permit impleader is the timeliness of the motion. "[J]oinder under Rule 14(a) is not automatic, and does not depend only on the existence of deadlines in scheduling orders, but instead is left to the trial court's discretion." *Spencer*, 2009 U.S. Dist. LEXIS 55370, at *10 (permitting joinder where no scheduling order issued in case and plaintiff did not oppose the motion). District courts in the Third Circuit have denied joinder where a party delayed proceeding once it discovered a basis for impleader. *See Rivera v. Kmart Corp.*, No. 05-0076, 2009 U.S. Dist LEXIS 5932, at *2 (D.V.I. Jan. 27, 2009) (denying joinder three years after case filed where defendant alleged indemnity pursuant to a lease agreement executed in 1991); *Scobie v. Waco Equip. Co.*, No. 03-1224, 2008 U.S. Dist LEXIS 36095, at *2 (W.D.Pa. May 1, 2008) (denying joinder five years after case filed where defendant alleged indemnity pursuant to a contract executed in 2000 and finding that recent deposition testimony about the circumstances of the contract were not necessary to establish a basis for joinder earlier).

Here, Defendants' reasons for delaying impleader of TMC Electrical are unpersuasive. Defendants filed this motion on the eve of the fact discovery deadline, several times extended and then standing at May 12, 2010. The case relied upon by Defendants for the idea that they can now obtain personal jurisdiction over TMC Electrical, *Nicastro*, merely reiterated the law in New Jersey that courts can exercise personal jurisdiction over foreign corporations that place their

products into the "stream of commerce" that reaches New Jersey. *See Charles Gendler & Co. v. Telecom Equip. Corp.*, 508 A.2d 1127 (1986). Defendants' delay in joining TMC Electrical, whom they knew was the manufacturer at the time the case was filed in 2007, was unreasonable, and this factor does not support joinder.

### b.   Probability of Trial Delay

Defendants do not contest the probability of trial delay resulting from their motion. Indeed, "delay is expected with the majority of Rule 14 motions." *Hitachi*, 2010 U.S. Dist. LEXIS 30562, at *15. The Court must, however, weigh this expected delay against the need to avoid multiple litigations on the same matter. *Id*. In *Ronson v. Talesnick*, 33 F. Supp. 2d 347 (D.N.J. 1999), the court denied Defendant's motion for leave to file a third-party complaint because "the untimeliness of the motion and the concomitant delay outweigh[ed] the other two factors." *Id*. at 358. The Court found the possible six-month trial delay problematic due to the late stage of the litigation and the complex nature of the case, which involved professional malpractice claims against Plaintiff's accountant and increasing tax liabilities. *Id*. at 358-59; *see Bethlehem Iron Works, Inc. v. Lewis Indus. Inc.*, No. 94-0752, 1995 U.S. Dist LEXIS 8474, at *2 (E.D.Pa. June 19, 1995) (holding that if defendant was "reasonably diligent", it would not have waited almost five months to discover that there was a basis for joining the proposed third-party defendants). Here, Defendants' efforts to add a foreign defendant shortly before the close of discovery in a case pending for several years already will certainly delay a trial. This factor does not support joinder.

### c. Potential for Complication of Issues at Trial

If this Court joins TMC Electrical, Plaintiff will have to argue for contribution or indemnification from the manufacturer. "[I]mpleading a third party will add some level of complexity to the trial." *Hitachi*, 2010 U.S. Dist. LEXIS 30562, at *16. Considerations involving the inevitable consequences of joinder, including greater trial complexity, "must be weighed against the alternative prospect of two separate trials and the need for attempting to coordinate, and in the end possibly consolidate, the matter for the sake of judicial economy." *Spencer*, 2009 U.S. Dist. LEXIS 55370, at *13. Because Defendants' claims against TMC Electrical involve the same factual circumstances and do not substantially complicate the legal issues involved in this case, this factor supports joinder of TMC Electrical.

### d. Prejudice to the Plaintiff

The "mere fact of delay" due to the addition of parties does not equate to prejudice to the Plaintiff. *Spencer*, 2009 U.S. Dist. LEXIS 55370, at *12 (granting motion for leave to file a third party complaint and noting that "it is unclear that Plaintiff will suffer any prejudice other than waiting a little longer for his day in court"); *see also Hitachi*, 2010 U.S. Dist. LEXIS 30562, at *17-18 (granting motion for leave to file a third-party complaint where plaintiff failed to demonstrate prejudice as a result of complexity or delay and had previously agreed to extend scheduling deadline to permit defendant to file the motion to amend). Here, however, Plaintiff has demonstrated that he will be prejudiced. Given the lengthy delay likely to result from bringing a foreign defendant into the litigation at this late stage, without any reasonable justification for the delay, Plaintiff will be unfairly prejudiced if TMC Electrical is joined. This

factor does not support joinder.

Given that three of the four factors do not support joinder of TMC Electrical, the Court denies Defendants' motion to join TMC Electrical.

### C. Firestone

The New Jersey Workers' Compensation Act ("WCA") provides:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for *intentional wrong*.

N.J. Stat. Ann. § 34:15-8 (emphasis added). "The New Jersey Supreme Court has held that the WCA 'provides the exclusive remedy for claims against an employer when a worker is injured on the job, except for those injuries that have resulted from the employer's 'intentional wrong.'"" *Almanzar v. C&C Metal Prods.*, No. 07-4002, 2010 U.S. Dist. LEXIS 32270, at *14 (D.N.J. March 31, 2010) (quoting *Mull v. Zeta Consumer Prods.*, 176 N.J. 385, 387 (2003)). "The Workers' Compensation system has been described as an historic 'trade-off' whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries." *Laidlow,* 170 N.J. 602, 605 (2002).

The Court in *Millison v. E. I. Du Pont de Nemours & Co.*, 101 N.J. 161 (1985) articulated what has come to be known as *Millison's* two-prong test:

> [I]n order for an employer's act to lose the cloak of immunity of N.J.S.A. 34:15-8, two conditions must be satisfied: (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be

> (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

*Mull*, 176 N.J. at 391 (citing *Laidlow*, 170 N.J. at 617); *see Millison*, 101 N.J. at 178-79.  Both prongs must be satisfied to find that an employer committed an intentional wrong.  *Laidlow*, 170 N.J. at 615.  "In general, the same facts and circumstances will be relevant to both prongs of *Millison*."  *Id*. at 623.  Resolution of a claim "will be grounded in the totality of the facts contained in the record and the satisfaction of the standards established in *Millison*."  *Id*.

With respect to the first (conduct) prong of the *Millison* test, whether the employer knew that his actions were *substantially certain* to result in an employee's injury or death, "the mere knowledge and appreciation of a risk – even the strong probability of a risk – will come up short of the 'substantial certainty' needed to find an intentional wrong resulting in avoidance of the exclusive-remedy bar of the compensation statute."  *Millison*, 101 N.J. at 179 (employer's actions of "knowingly exposing plaintiffs to asbestos clearly amount[ed] to deliberately taking risks with employees' health" but did not rise to the level of substantial certainty needed to constitute an intentional wrong).  "[C]ourts must determine whether 'virtual certainty' of injury or death existed under the conduct prong."  *Fermaintt v. McWane Inc.*, 694 F. Supp. 2d 339, 345 (D.N.J. 2010).

New Jersey courts have provided further guidance on when an employer's behavior reaches the threshold required by *Millison's* two-prong test to constitute an intentional wrong.  There is no "per se rule that an employer's conduct equates with an 'intentional wrong' within the meaning of N.J.S.A. 34:15-8 whenever that employer removes a guard or similar safety

device from equipment or machinery, or commits some other OSHA violation." *Laidlow*, 170 N.J. at 622-23.  Instead, New Jersey courts use the following factors in their analysis: (1) prior accidents or near misses relating to the machinery in question; (2) whether the employer intentionally disabled safety equipment for profit or production; and (3) prior OSHA citations and knowing misrepresentations to OSHA.  *Fermaintt*, 694 F. Supp. 2d at 346-47.

Firestone's actions here, or actions that can be attributed to Firestone through its employees,  do not rise to the level necessary to overcome the workers' compensation bar.  *See Fermaintt*, 694 F. Supp. 2d at 347-49 (neither prong of *Millison* test met where Plaintiff's decedent was fatally struck by a pipe even though the "anti-rollback" device was disabled one to ten times per day because there were no pre-accident OSHA violations, there was only one related prior injury in the past ten years, there was no testimony from other employees of near misses, and the employer did not disable safety the device for profit); *Laidlow*, 170 N.J. at 607-09 (if plaintiff's allegations are proven true, both prongs met where employer was previously warned of the danger posed by the machine by plaintiff and another employee who had nearly lost his fingers in the machine and employer removed a safety guard for "speed and convenience" and only put guard in place when OSHA visited the worksite).

In the instant matter, Firestone did not commit an intentional wrong.  Defendants have no evidence of prior "close-calls", no previous notice or complaints of a hazardous condition related to the accident given to Firestone or prior similar accidents.  The allegation that the work site was unclean is irrelevant since there is no allegation that a lack of cleanliness caused this accident.  Further, Firestone did not "disable" safety equipment for profit or production.  Instead, as

Defendants themselves admit, the hydraulic lift was removed from the Stand because it did not work.  (*See* Def. Brief at 8-9).   Finally, Defendants have no evidence of prior OSHA citations or deception directed to OSHA inspectors during work site inspections.  Thus, the first prong of the *Millison* test is not met here.  With respect to the second prong, the previous facts indicate that Firestone's behavior does not meet the test.  In addition, the dangers of working with a flammable liquid are well-known to those who repair cars, and this tragic accident is a fact of life for this type of industrial employment - not one which the Legislature never planned to immunize.  *See Fisher v. Sears, Roebuck & Co.*, 363 N.J. Super 457, 473 (N.J. Super. Ct. App Div. 2003) (holding that unarmed security guard's murder during a robbery was barred by workers' compensation because "dangerous activity is a fact of life for security guards").

      Courts have also previously held that the WCA preempts actions under the Joint Tortfeasors Contribution Act.  *Ramos v. Browning Ferris Indus., Inc*., 103 N.J. 177, 184 (1986) ("Because the employer cannot be a joint tortfeasor, it is not subject to the provisions of the Joint Tortfeasors Contribution Law, and a third-party tortfeasor may not obtain contribution from an employer, no matter what may be the comparative negligence of the third party and the employer.").  Therefore, Defendants have not met the test under the WCA to join Firestone.

## IV.  CONCLUSION

Defendants' motion to join TMC Electrical and Firestone as third-party defendants should be *denied*.

s/Esther Salas<br>
**Hon. Esther Salas, U.S.M.J.**