# MAZIE SLATER KATZ & FREEMAN, LLC

COUNSELLORS AT LAW

103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-9898
Fax (973) 228-0303
www.mskf.net

Writer's Direct Dial: 973-228-9911

David A. Mazie*†
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman

*Certified by the Supreme Court of
 New Jersey as a Civil Trial Attorney

†Certified as a Civil Trial Specialist
 by the National Board of
 Trial Advocacy

Counsel
Beth G. Baldinger°

Jennifer D. Pawlak°
Matthew R. Mendelsohn°
John D. Gagnon
Karen G. Kelsen°
Cheryll A. Calderon
Andrew S. Riso°

°Member of N.J. & N.Y. Bars

March 22, 2011

**VIA ECF**
Honorable Esther Salas, U.S.M.J.
United States District Court
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07102

  Re: Mechin vs. Carquest Corporation, et al.
     Civil Action No.: 07-5824 (SDW)

Dear Judge Salas:

  I am writing to ask the Court to set a briefing schedule for a Rule 11 motion we intend to file against all defendants due to their frivolous filing of a motion for summary judgment under N.J.S.A. 2A:58C-9.

  Each of the defendants has filed a motion for summary judgment pursuant to the "innocent seller" defense contained in N.J.S.A. 2A:58C-9, arguing that TMC Electrical, Inc., a Chinese company (the Chinese Company") and the manufacturer of the product is a viable defendant in the United States. The New Jersey Product Liability Act provides that an "innocent seller" of a product can be relieved from liability if it can establish that plaintiff has viable claims against the manufacturer. However, the Act expressly provides that a manufacturer is not considered to be viable where:

> (2) The manufacturer has no known agents, facility or other presence within the United States; or (3) The manufacturer has no attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate."

Honorable Esther Salas, U.S.M.J.
March 22, 2011
Page 2

>N.J.S.A. 2A:58C-9(c)(2) and (d)(3). See also Claypotch v. Heller, Inc., 360 N.J. Super. 472, 485-486 (App. Div. 2003).

It is the **defendants' burden** to prove each of these elements. Id.; See also Harbor Cove Marine Services, Inc. v. Rabinowitz, 2005 WL 1038957 *4 (D.N.J. May 3, 2005) ("to be entitled to judgment as a matter of law…[the seller] needed to present evidence showing… that the manufacturers of the products at issue are available from which to recover a judgment;"). Despite having the statutory burden of proof, none of the defendants have provided any proof that TMC Electrical has a presence -- or any assets -- in the United States.

In fact, the defendants have taken the exact opposite position throughout this four year old litigation, and Thomas Miller, the owner of several of the defendants, has taken contradictory positions on this issue before this Court. In answering interrogatories in this case, the defendants expressly denied any relationship between the Chinese Company and the defendants: "there is no corporate structure between Tasco and/or TMC Enterprises and TMC Electrical Products, Co., Ltd." (See portion of Tasco and TMC Enterprises' Answers to Interrogatories attached hereto to as Exhibit "A".) However, in his motion for summary judgment on behalf of his wholly owned company Voltec, Mr. Miller argues that defendant, TMC Enterprises is the Chinese Company's presence in the United States. Mr. Miller then **contradicts that position** in his motion for summary judgment filed on behalf of TMC Enterprises (another of his other wholly owned companies) wherein he confirms that TMC Enterprises has **no relationship** with the Chinese Company. Moreover, in his deposition Mr. Miller testified under oath that TMC Enterprises is not even a legal entity, but rather is a d/b/a for defendant, Tasco. See deposition of Thomas Miller, 28:3-17, attached hereto as Exhibit "B") Thus, regardless of which defendant is correct, TMC Enterprises could not be, under any circumstances, a presence for the Chinese Company as TMC Enterprises is not even a legal entity. Accordingly, the defendants have failed to put forth any evidence that the Chinese Company has a presence **and** assets in this country, and their respective motions for summary judgment under the "innocent seller" defense are wholly frivolous and in violation of Rule 11.

Based upon the foregoing, we ask for permission to file a Rule 11 motion to coincide with the pending motions for summary judgment. We gave the defendants time to withdraw their motions and they refused. Accordingly, it is appropriate file this motion at this time.

Respectfully submitted,

DAVID A. MAZIE

cc: John H. Maucher, Esq.
Scott L. Haworth
John D. Shea, Esq.

DAM:tl
(H:\DAM\Mechin\Salas ltr. 3-22-11.docx)

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN MICHAEL MECHIN,<br><br>    Plaintiff,<br><br>vs.<br><br>CARQUEST CORPORATION, CARQUEST PRODUCTS, INC.; TMC ENTERPRISES; VOLTEC INDUSTRIES; TASCO; BWP DISTRIBUTORS, INC.; and ABC CORPORATIONS 1-10 (said names presently unknown and factitious),<br><br>    Defendants, | CIVIL ACTION NO.: 07-5824(HAA)<br><br><br><br>DEFENDANTS TASCO AND TMC ENTERPRISES' RESPONSES TO PLAINTIFF'S FIRST SET OF SUPPLEMENTAL INTERROGATORIES |

Defendants Tasco Industries, Inc. ("Tasco") and TMC Enterprises ("TMC") (collectively "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiff's First Set of Supplemental Interrogatories as follows:

### OBJECTIONS TO DEFINITIONS

1. Defendants object to Plaintiff's definition of "Document", "documents" and "documentations" to the extent these terms as defined are overbroad, unduly burdensome, unlimited in time and scope, and seek information that is neither relevant to the subject matter of the pending litigation nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the extent the terms as defined could require the disclosure of privileged information protected by the attorney client privilege, attorney work product and information obtained and/or prepared in anticipation of litigation.

2. Defendants object to Plaintiff's definition of "Communication" and "communications" to the extent these terms as defined are overbroad, unduly burdensome and seek information that is

## RESPONSES TO PLAINTIFF'S SUPPLEMENTAL INTERROGATORIES

1. Describe the relationship between the responding defendant and each of the non-responding defendants. Attach all documents supporting the stated relationships.

**ANSWER:** Defendants object to this interrogatory and the corresponding request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that the term "relationship" is not defined or limited in scope or time. Without waiving any objections, and assuming that the interrogatory is seeking information relating to corporate structure between the various defendants, Defendants Tasco and TMC Enterprises answer as follows: Defendant Tasco Industries Inc. is a California Corporation, and Defendants TMC Enterprises and Voltec Industries are subsidiaries of Tasco Industries, Inc. By way of further response, Defendants Tasco Industries, Inc. and TMC Enterprises have no corporate relationship with co-defendants Carquest Corporation, Carquest Products, Inc., or BWP Distributors, Inc. The Articles of Incorporation of Tasco Industries, Inc. are attached hereto.

2. Describe the relationship between the responding defendant and TMC Electrical Products Co., LTD. Attach all documents supporting the stated relationship.

**ANSWER:** Defendants object to this interrogatory and corresponding request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that the term "relationship" is not defined or limited in scope or time. Without waiving any objections, and assuming that the interrogatory is seeking information relating to the corporate structure between Defendants Tasco Industries, Inc. and/or TMC Enterprises and TMC Electrical Products, Co., LTD; Defendants Tasco Industries, Inc. and TMC Enterprises state that

there is no corporate structure between Tasco and/or TMC Enterprises and TMC Electrical Products, Co., LTD.

By way of further response, and with respect to the drop light product at issue in this matter and without knowledge of the exact production date of the product, the general process from receipt of the purchase order to production would have been that TMC Enterprises received the purchase order from Voltec Industries, then TMC Enterprises would have placed the purchase order with Centraluxe Enterprises, LTD, a Hong Kong corporation, which then placed the purchase order with TMC Electrical Products, Co., LTD. TMC Enterprises has had a working relationship with TMC Electrical Products, Co., LTD for over twenty years, but neither Tasco Industries, Inc. nor TMC Enterprises have an ownership interest in TMC Electrical Products, Co., LTD.

3. Identify who pays the employees of the responding defendant.

**ANSWER:** Defendant Tasco Industries, Inc. has no employees. Defendant TMC Enterprises pays the employees of that company.

4. Identify who pays the employees of TMC Electrical Products Co., LTD.

**ANSWER:** Based upon information and belief, TMC Electrical Products Co., LTD pays its employees.

5. Advise whether the responding defendant shares any bank accounts with each of the non-responding defendants. Identify all such accounts.

**ANSWER:** Defendants Tasco Industries, Inc. and TMC Enterprises maintain separate bank accounts, and do not share any bank accounts with the non-responding defendants.

# EXHIBIT B

```
 1              UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF NEW JERSEY

 3   - - - - - - - - - - - - - - -

 4   JEAN MICHAEL MECHIN,            :

 5              Plaintiff,            :

 6        -vs-                        :   CIVIL ACTION NO.

 7   CARQUEST CORPORATION,            :   2:2007cv05824(HAA)

 8   CARQUEST PRODUCTS, INC.;         :

 9   TMC ENTERPRISES; VOLTEC          :

10   INDUSTRIES; TASCO; BWP           :

11   DISTRIBUTORS, INC.; and          :

12   ABC CORPORATIONS 1-10            :

13   (said names presently            :

14   unknown and fictitious).,        :

15              Defendants.           :

16   - - - - - - - - - - - - - - -

17            DEPOSITION OF:  THOMAS MILLER

18            TUESDAY, FEBRUARY 9, 2010

19

20            ROSENBERG & ASSOCIATES, INC.

21       Certified Court Reporters & Videographers

22    425 Eagle Rock Ave., Suite 201     575 Madison Ave.

23    Roseland, NJ 07068                 New York, NY 10022

24    (973) 228-9100   1-800-662-6878    (212) 868-1936

25             www.rosenbergandassociates.com
```

### 26

1  S-T-E-L-Z-R-I-E-D-E. I'm not sure on that. Oh,
2  there's one other name. He wasn't there with us
3  that long and the name escapes me right now.
4  But that's the bulk of it, sir. I might be
5  missing one or two, but --
6      Q.   And what do you do at the company?
7      A.   I'm the president. I'm heavily
8  involved in sales, marketing, and working with
9  customers.
10     Q.   What does your wife, Sheila, do?
11     A.   Sheila's finance. Finance manager.
12     Q.   What does Sean Miller do?
13     A.   Sean Miller is VP of sales and
14 marketing.
15     Q.   What does Steve Gindlia do?
16     A.   Steve's VP of retail hardware.
17     Q.   What does that mean?
18     A.   He works mostly with the retail
19 guys, like Home Depot, Lowe's, Ace Hardware.
20 Retail. Hardware more on the retail side.
21     Q.   What does Terry Miller do?
22     A.   Terry's customer service and
23 accounts payable, receivable.
24     Q.   What about Sam Gomberg?
25     A.   Sam is no longer with us, but he

### 27

1  was a customer service and inside sales.
2      Q.   What about Dan Stelzriede?
3      A.   Danielle? She was also inside
4  sales, customer service. She's no longer with
5  us.
6      Q.   Did I ask you about Chris Sullivan?
7      A.   No, you did not.
8      Q.   What's Chris Sullivan do?
9      A.   Chris is inside sales and customer
10 service.
11     Q.   Who develops the products?
12     A.   TMC?
13     Q.   Yeah.
14     A.   Because, again, being an OEM, a lot
15 of our customers do, okay, and then we'll also,
16 you know, work with factories that have products
17 and product development.
18     Q.   Okay. Again, you said TMC. There
19 is no TMC, correct?
20     A.   TMC Enterprises. We shorten it up.
21     Q.   When you're talking about TMC
22 Enterprises you're talking about Tasco?
23     A.   Well, we sell -- my business card
24 says TMC Enterprises. Again, TMC Enterprises
25 was the first company. We started Tasco because

### 28

1  we could not incorporate TMC Enterprises. So
2  Tasco is a California corporate identity.
3      Q.   So is it fair to say that Tasco is
4  a California corporation doing business as TMC
5  Enterprises?
6      A.   Well, it's actually, from a legal
7  standpoint, I guess it's the other way around,
8  yeah. TMC California -- Tasco is a California
9  corp. and TMC is the d/b/a, yeah.
10     Q.   I think that's what I said.
11     A.   Okay.
12     Q.   Just so we're clear, Tasco
13 corporation is a California corporation --
14     A.   Yes.
15     Q.   -- that is doing business as TMC
16 Enterprises.
17     A.   Yes.
18     Q.   Does Tasco itself do business under
19 the name of Tasco or any other entity other than
20 TMC Enterprises?
21     A.   Well, Voltec is there now as of
22 last year, is now under the Tasco corp.
23     Q.   We'll get to that in a second.
24          Any other entities?
25     A.   No, sir.

### 29

1      Q.   Now, is Voltec a California or
2  United States corporation?
3      A.   It's, it was, it's under, currently
4  it's under Tasco.
5      Q.   Is Voltec a legal entity, in other
6  words, incorporated, or incorporated as an LLC
7  or anything like that?
8      A.   It started as a corporation, an LLC
9  corporation in the state of Nevada, and as of
10 last year it became part of Tasco corp.
11     Q.   When you say it became part of it,
12 what does that mean?
13     A.   Well, I guess it's now, it's just
14 like TMC, a d/b/a of Tasco.
15     Q.   Voltec before was an LLC you said?
16     A.   Yes, sir.
17     Q.   When was Voltec formed as an LLC?
18     A.   2001.
19     Q.   And that's the first time it was
20 formed as any legal entity?
21     A.   That's correct.
22     Q.   And that would be in California?
23     A.   No, in Nevada.
24     Q.   Nevada. Okay.
25          Voltec was formed as an LLC in