# MAZIE SLATER KATZ & FREEMAN, LLC

COUNSELLORS AT LAW

103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-9898
Fax (973) 228-0303
www.mskf.net

David A. Mazie*†
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman

\* Certified by the Supreme Court of
  New Jersey as a Civil Trial Attorney

† Certified as a Civil Trial Specialist
  by the National Board of
  Trial Advocacy

Writer' Direct Dial: (973) 228-9911

April 1, 2011

Counsel
Beth G. Baldinger°

Jennifer D. Pawlak°
Matthew R. Mendelsohn°
John D. Gagnon
Karen G. Kelsen°
Cheryll A. Calderon

° Member of N.J. & N.Y. Bars

*VIA ECF*

Honorable Esther Salas, U.S.M.J.
United States District Court
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07102

Re:   Mechin vs. Carquest Corporation, et als.
      Civil Action No.: 07-5824

Dear Judge Salas:

Plaintiff submits this letter brief in support of his motion for sanctions pursuant to Fed. R. Civ. P. 11 against Scott Haworth, Esq. (counsel for defendant Voltec), John D. Shea, Esq., (counsel for TMC Enterprises and Tasco), and John H. Maucher, Esq. (counsel for defendants BWP Distributors, Inc., Carquest Corporation and Carquest Products, Inc.) As set forth in our prior correspondence with the Court, defendants have filed motions for summary judgment seeking dismissal of plaintiff's claims pursuant to the "innocent seller defense". Each of these motions is frivolous and filed in bad faith, and accordingly Rule 11 sanctions should be levied against defense counsel.

Case 2:07-cv-05824-SDW -ES   Document 120   Filed 04/01/11   Page 2 of 18 PageID: 6865

Honorable Esther Salas, U.S.M.J.
April 1, 2011
Page 2

Rule 11 imposes an affirmative duty on attorneys to conduct a reasonable inquiry into the factual and legal bases of their claims before filing any document with the Court. <u>Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.</u>, 498 <u>U.S.</u> 533 (1991); <u>Bensalem Twp. v. International Surplus Lines Insurance Company</u>, 38 <u>F.3d</u> 1303, 1314 (3rd Cir. 1994). Where a pleading or motion is patently without merit or frivolous, Rule 11 sanctions should be imposed. <u>Martin v. Farmers First Bank</u>, 151 <u>F.R.D.</u> 44, 48 (E.D.Pa 1993). Rule 11 sanctions are appropriate when a party files a frivolous motion for summary judgment. In <u>Melrose v. Shearson/American Express, Inc.</u> 898 <u>F. 2d</u> 1209 (7th Cir. 1990). In <u>Melrose</u>, the court found that many of the arguments made in defendant's motion for summary judgment were "baseless" as well as "frivolous and improper." <u>Id</u>. at 1213. As a result, the court imposed sanctions against defense counsel under Rule 11 for the fees which the plaintiff incurred having his attorney oppose those aspects of the motion which the court deemed frivolous.[1]

Sanctions should be levied against defense counsel here for filing frivolous motions for summary judgment under the "innocent seller" defense, <u>N.J.S.A.</u> 2A:58C-9. As will be set forth at length in plaintiff's opposition to the motions, the defendants have filed their lengthy motions even though their clients have previously certified that they cannot assert the defense. The basis for the defendants' motions, <u>N.J.S.A.</u> 2A:58C-9, provides a safe haven for sellers of a defective product if they (1) file an affidavit certifying, the correct identity of the manufacturer of the product (<u>N.J.S.A.</u> 2A:58C-9(a)); (2) establish that the manufacturer has **both** a presence and attachable assets in the United States (<u>N.J.S.A.</u> 2A:58C-9(c)); and (3) prove that the "innocent seller" did not exercise any significant control over the packaging or labeling of the product, and

---

[1] In fact, the Court imposed sanctions even though the defendant was partially successful in its motion. <u>Id</u>. at 1215-1216.

Honorable Esther Salas, U.S.M.J.
April 1, 2011
Page 3

that it did not create the defect in the product.  (N.J.S.A. 2A:58-9(d)(1) and (d)(3)).  Defendants' motions are frivolous because they cannot meet any of these requirements.

First, defendants cannot raise the innocent seller defense because they never filed the requisite affidavit as required by N.J.S.A. 2A:58-9(a). It is too late for the defendants to correct their error and to file such an affidavit, as the statute contemplates a timely filing, well before the close of discovery.   See Claypotch v. Heller, Inc., 360 N.J. Super. 472, 486-487 (App. Div. 2003).  As the Court is well aware, fact discovery expired six months ago, and the deadline to add new parties expired fifteen months ago.  Accordingly, although it was patently obvious to the defendants that they had failed to file the statutory affidavit -- and that it was too late to do so -- they nevertheless filed their motions and wasted the Court's time and counsel's time. For this reason alone, defendants' motions are frivolous on their face.

Second, defendants cannot meet their burden of proving that the manufacturer of the product, TMC Electrical, Inc. (the "Chinese Company") has **both** a presence --  and assets  -- in the United States, nor have they even attempted to do so.  The law is crystal clear that in order for the defendants to be relieved from liability as an innocent seller, **they have the burden** to establish that the manufacturer of the drop light has both a presence and attachable assets in the United States.  See N.J.S.A. 2A:58C-9(c) and (d); Claypotch 360 N.J. at 485-486; Harbor Cove Marine Services, Inc. v. Rabinowitz, 2005 WL 1038957 *4 (D.N.J. May 3, 2005) ("to be entitled to judgment as a matter of law…[the seller] needed to present evidence showing… that the manufacturers of the products at issue are available [in the United States] from which to recover a judgment").  Not only have the defendants failed to place any such evidence in the record, but since the inception of this case defendants have taken the position that the Chinese Company has

Honorable Esther Salas, U.S.M.J.
April 1, 2011
Page 4

no presence nor assets in the United States. For example, Thomas Miller, the principal of defendants Voltec, TASCO and TMC Enterprises, testified under oath that the Chinese Company has no United States presence. (See portion of deposition of Thomas Miller ("Miller Dep."), 71:16-72:13), attached hereto as Exhibit "A"). Consistent with that testimony, counsel for defendants TASCO and TMC Enterprises confirmed in writing that "TMC Electrical Products [the Chinese Company] does not have any offices, employees or representatives in the US." (See March 18, 2010 e-mail from Jack Shea, Esq. attached hereto as Exhibit "B"). Moreover, as the Court will recall, when defendants sought leave to join the Chinese Company as a party to this action, they each represented to the Court that the service of process would have to be accomplished through the Hague Convention because it had no American presence. (See portion of defendants' brief attached hereto as Exhibit "C"). Defense counsel has now contradicted those representations by arguing that the Chinese Company has an American presence as evidenced by a California address listed on its website. Again, defense counsel is playing fast and loose with this Court. As defendants are well aware, the California address listed on its website is not for the Chinese Company, but rather for defendant, TMC Enterprises, which has certified that it has no corporate affiliation with the Chinese Company. In answering interrogatories in this case, the defendants certified "there is no corporate structure between TASCO and/or TMC Enterprises and TMC Electrical Products, Co., Ltd….neither TASCO Industries, Inc. nor TMC Enterprises have an ownership interest in TMC Electrical Products, Ltd." (See portion of TASCO and TMC Enterprises' answer to interrogatory number 2 attached hereto as Exhibit "D"). Moreover, Mr. Miller also testified at his deposition that Voltec, TASCO or TMC Enterprises do not have any relationship with the Chinese Company. (Miller Dep., 30:9-31:4). Thus, despite their client

Honorable Esther Salas, U.S.M.J.
April 1, 2011
Page 5

testifying under oath that the Chinese Company has no legal affiliation with any of his companies, defense counsel has argued in the pending summary judgment motions that TMC Enterprises is the Chinese Company's presence in the United States.  Incredibly, defendant TMC Enterprises, one of Mr. Miller's other wholly owned companies, then **contradicts that position** in its own motion for summary judgment where it confirms that it has **no relationship** with the Chinese Company.  Thus, not only did the defendants **fail to present any evidence** to establish that the Chinese Company has a presence and assets in the United States, but they have blatantly misrepresented facts to this Court.  Clearly, the various defendants are playing fast and loose, and Rule 11 sanctions are appropriate.

Because the defendants' motions for summary judgment are completely frivolous and based on clear misrepresentations of the record, defense counsel should be responsible for reimbursing plaintiff's counsel for all attorney's fees and costs in responding to their motions.[2]

                                        Respectfully,

                                        DAVID A. MAZIE

cc:     All Counsel

---

[2] We will submit a certification of services if this motion is granted.

# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
 2             FOR THE DISTRICT OF NEW JERSEY
 3   - - - - - - - - - - - - - - -
 4   JEAN MICHAEL MECHIN,           :
 5              Plaintiff,          :
 6              -vs-                :  CIVIL ACTION NO.
 7   CARQUEST CORPORATION,          :  2:2007cv05824(HAA)
 8   CARQUEST PRODUCTS, INC.;       :
 9   TMC ENTERPRISES; VOLTEC        :
10   INDUSTRIES; TASCO; BWP         :
11   DISTRIBUTORS, INC.; and        :
12   ABC CORPORATIONS 1-10          :
13   (said names presently          :
14   unknown and fictitious),       :
15              Defendants.         :
16   - - - - - - - - - - - - - - -
17            DEPOSITION OF:  THOMAS MILLER
18            TUESDAY, FEBRUARY 9, 2010
19
20            ROSENBERG & ASSOCIATES, INC.
21         Certified Court Reporters & Videographers
22    425 Eagle Rock Ave., Suite 201    575 Madison Ave.
23    Roseland, NJ 07068                New York, NY 10022
24     (973) 228-9100   1-800-662-6878   (212) 868-1936
25            www.rosenbergandassociates.com
```

### Page 30

1  Nevada in 2001 and continued in existence until
2  2009?
3     A.   That's correct, sir.
4     Q.   And then after 2009 it stopped
5  being a legal entity; is that correct?
6     A.   As a Nevada LLC, yeah, that's
7  correct. I get confused with the legal part of
8  it.
9     Q.   Is it fair to say that of all the
10 companies you've owned or employed by or
11 affiliated with there's only one legal entity
12 and that would be Tasco?
13    A.   That's correct.
14    Q.   And Tasco does business as either
15 Voltec or TMC Enterprises?
16    A.   That's correct.
17    Q.   And are there any other legal
18 entities that are currently in existence that
19 you are affiliated with in any way, shape, or
20 form?
21    A.   No, sir.
22    Q.   And are there any other entities,
23 or names, rather, that you do business as other
24 than Voltec, Tasco, or TMC Enterprises?
25    A.   No, sir.

### Page 31

1     Q.   Are there any other entities or
2  business names that Tasco, TMC Enterprises, or
3  Voltec have any relationship with?
4     A.   No, sir.
5     Q.   And so the facility you were
6  talking about in California that you moved into,
7  when did you move into that?
8     A.   The current one, two years ago.
9     Q.   And where's that located?
10    A.   13885 Ramona Avenue in Chino,
11 California.
12    Q.   Does Voltec have its own bank
13 accounts?
14    A.   Yes, sir.
15    Q.   Why is that if it's not a separate
16 entity?
17    A.   Well, it's still, you know, we just
18 brought it over this past year, and so it still
19 has, you know, there's still other -- I'm not
20 the accountant part of it, but there's still
21 other things that have to be brought in.
22         Again, over the last eight, nine
23 years, from a sales and marketing standpoint,
24 they've marketed themselves as Voltec. That's
25 what people know them as. They don't know them

### Page 32

1  as Tasco or TMC.
2     Q.   Is it fair to say that the
3  employees that work in your facility all work
4  for Tasco?
5     A.   Yeah, in some sense, I guess so.
6     Q.   Okay. Well, they're all -- Voltec
7  is no longer a legal entity, correct?
8     A.   Well, Voltec cuts their paychecks
9  for them, so when they look at their paycheck,
10 it says Voltec. Other than the, again, my
11 limited understanding, there is, you know, on
12 the invoices and so forth they'll say Voltec,
13 and then small, you know, say, "A Division of
14 Tasco Industries, Inc."
15    Q.   Okay. When you say you had a wall
16 between Voltec and TMC Enterprises, why is that?
17    A.   Different businesses. Different
18 markets we go to. I mean there's an opening in
19 the wall, but it separates them because we have
20 different focuses from a sales and marketing
21 standpoint.
22    Q.   And different products being sold?
23    A.   Yes. We sell medical products at
24 TMC. They don't do anything like that at
25 Voltec.

### Page 33

1     Q.   TMC obviously also sells automotive
2  products, correct?
3     A.   Well, we sell lighting products and
4  cable products. They use various markets, not
5  specifically geared towards automotive.
6     Q.   When did Voltec officially cease
7  being a legal entity?
8     A.   Again, I believe that was 2009.
9     Q.   When in 2009?
10    A.   I don't remember the month exactly,
11 sir.
12    Q.   Who were the officers and directors
13 and employees of Voltec when it was in existence
14 from 2009 and earlier?
15    A.   Myself and my wife.
16    Q.   Anyone else?
17    A.   Yeah. At that time when we first
18 started it, Mr. Zhou and his wife from China,
19 they were.
20    Q.   And that was back in 2001 you said?
21    A.   2001.
22    Q.   And from 2001 until it was
23 dismantled in 2009, can you provide me with
24 every person who's ever been an officer,
25 director, or owner of Voltec other than Mr. Zhou

**Page 70**

1  Q.  And then TMC Electrical in China
2  manufactured the product and shipped it directly
3  to Carquest?
4  A.  That's correct.
5  Q.  Okay.  Who did the safety testing
6  for the product?
7  A.  Safety testing being Underwriters
8  Laboratories?
9  Q.  Any type of safety testing.
10  A.  The factory.
11  Q.  That would be TMC Electrical?
12  A.  Yes, sir.
13  Q.  And Mr. Zhou?
14  A.  Well, yeah.  His team, yeah.
15  Q.  Who designed the product?
16  A.  The product didn't really -- these
17  products were pretty much already out.  Mr. Zhou
18  and his team I guess at the end of the day you
19  can say designed it, but these products were
20  already built out in the industry for many, many
21  years.  We'd had built products on an OEM basis
22  for our other customers here in the United
23  States, so there wasn't any, you know, it wasn't
24  reinventing the wheel.  You know, there's a
25  slight change, a slight color change or maybe a

**Page 71**

1  different bracket, so, you know.
2  Q.  Who originally designed the product
3  involved in this case?
4  A.  It was the factory.
5  Q.  Meaning in China?
6  A.  Yeah.  But from products that were
7  in the market.
8  Q.  Do you know if the factory in China
9  had an engineer design the product?
10  A.  I don't know specifically which
11  engineer or what they had.  They --
12  Q.  And as far as you know, UL is the
13  only laboratory or entity that ever tested the
14  product, correct?
15  A.  That's correct.
16  Q.  Were you involved in making the UL
17  submission?
18  A.  We used to assist the factory -- I
19  don't know specifically on this one if we were.
20  We did assist the factory through our TMC
21  Enterprises office because in the beginning
22  there was no ability for Underwriters
23  Laboratories to handle the submission in China.
24  They didn't have the testing facilities there at
25  that time, so everything would come through the

**Page 72**

1  U.S.  So because Chinese to English was an
2  issue, we would act as a conduit or as an agent
3  for the factory to help get their product in.
4  So it was really our office was just a conduit.
5  We would take the information from UL, give it
6  to our TMC China office, which everyone speaks
7  English there, they would make sure it's
8  translated to the factory, in this case TMC
9  Electrical Products, but they do that for all
10  the factories we work with, and then it would go
11  through.  Now, in the last seven or eight years,
12  UL set up testing facilities where the factories
13  can actually handle it in China.
14  Q.  The UL testing for this particular
15  product that was involved in this incident, was
16  your company a conduit?
17  A.  I believe so.  I cannot be
18  100 percent sure, sir.
19  Q.  Okay.  Let me show you --
20  MR. MAZIE:  We'll mark this.
21  MR. MULCAHY:  By "your company" in
22  that context, you're talking about TMC
23  Enterprises; is that correct?
24  MR. MAZIE:  I'm actually referring
25  to any of his entities.

**Page 73**

1  MR. MULCAHY:  That's why -- it's a
2  continuing objection because it's a continually
3  misleading question if that's the intent of your
4  question.
5  MR. MAZIE:  The intent is to be
6  Tasco, TMC Enterprises, Voltec, or any of his
7  other companies to the extent they exist.
8  MR. MULCAHY:  I understand that,
9  but I'm not sure the witness does, because when
10  you say "your company," my understanding of his
11  response, for example, I'm not suggesting this,
12  he can clarify it, my understanding was his
13  response was couched in terms of TMC
14  Enterprises.  But if your intent of the question
15  was to include all of them, I'm not sure the
16  witness understood.
17  MR. MAZIE:  Okay.
18  Q.  Who submitted the UL applications
19  for the product involved in this particular
20  lawsuit?
21  A.  The UL agency agreement between the
22  factory was with TMC Enterprises.
23  Q.  Your company that's located in
24  California, but that was incorporated in
25  Illinois?

# EXHIBIT B

# Matthew Mendelsohn

| | |
|---|---|
| **From:** | Shea, John <shea@litchfieldcavo.com> |
| **Sent:** | Thursday, March 18, 2010 6:33 PM |
| **To:** | Matthew Mendelsohn; Stratis, Jennifer; Thomas Mulcahy; Danielle Bohlen |
| **Cc:** | David Mazie |
| **Subject:** | RE: Mechin |

Matt, Tom Miller testified at his deposition that TMC Enterprises served as the agent for TMC Electrical Products in connection with UL submissions for products that were manufactured in China. That would explain why a telephone number in Diamond Bar, California would be included in the UL materials. Can you please email me a copy of the document from the UL submission you reference in your email below or email me the bates range number for the document?

Mr. Miller has represented that to the best of his knowledge, TMC Electrical Products does not have any offices, employees or representatives in the US. Chris Sullivan is listed in the answers to the supplemental interrogatories as an employee of TMC Enterprises, which was confirmed at Mr. Miller's deposition.

Jack.

John D. Shea, Esquire
Litchfield Cavo, LLP
*An Illinois Limited Liability Partnership*
Commerce Center
1800 Chapel Avenue West, Suite 360
Cherry Hill, New Jersey 08002
(856)382-2274 (Direct)
(856)751-1230 (Fax)

---

**From:** Matthew Mendelsohn [mailto:mmendelsohn@mskf.net]
**Sent:** Thursday, March 18, 2010 3:22 PM
**To:** Shea, John; Stratis, Jennifer; Thomas Mulcahy; Danielle Bohlen
**Cc:** David Mazie
**Subject:** Mechin

Jack,

I located a phone number in the UL submissions that supposedly belongs to TMC Electrical Products (Shenzhen) Co., Ltd. located in Diamond Bar, CA. I called the number and I requested to speak with an employee of TMC Electrical Products (Shenzhen) Co., Ltd. I was put on the phone with Chris Sullivan who he confirmed worked for TMC Electrical Products (Shenzhen) Co., Ltd. ("the Chinese company") However, when he gave me his email address, it was csullivan@tmc-enterprises.com. Upon hearing the email address -- which appears to be the same as the employees of TMC Enterprises -- I ended the phone call. I would appreciate you confirming that Mr. Sullivan is not an employee of TMC Enterprises and again would ask that you confirm that TMC Electrical Products (Shenzhen) Co., Ltd. does not maintain an office, employees or representatives in the US.

Matt

Matthew R. Mendelsohn
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
tel (973) 228-0391
fax (973) 228-0303

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEAN MICHEL MECHIN, | : | CIVIL ACTION NO.: 2:07cv05824 |
| | : | (GEB)(ES) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CARQUEST CORPORATION, CARQUEST | : | CIVIL ACTION |
| PRODUCTS, INC.; TMC | : | |
| ENTERPRISES; VOLTEC INDUSTRIES; | : | |
| TASCO; BWP DISTRIBUTORS, INC.; | : | |
| and ABC CORPORATIONS 1-10 (said | : | |
| names presently unknown and | : | |
| factitious), | : | |
| | : | |
| Defendants, | : | |

---

**DEFENDANTS, TASCO AND TMC ENTERPRISES' BRIEF IN SUPPORT OF
MOTION FOR LEAVE TO FILE A THIRD-PARTY COMPLAINT AGAINST
BRIDGESTONE RETAIL OPERATIONS, LLC AND
TMC ELECTRICAL PRODUCTS (SHENZHEN) CO. LTD.
PURSUANT TO FED. R. CIV. P. 14(a)**

---

Motion Date: May 17, 2010

Oral Argument is Requested pursuant to L.Civ.R. 78.1


LITCHFIELD CAVO LLP
*An Illinois Limited Liability Partnership*
John D. Shea, Esquire
Jennifer L. Stratis, Esquire
1800 Chapel Avenue West, Suite 360
Cherry Hill, New Jersey 08002
(856)-854-3636
Attorneys for Defendants, Tasco and TMC Enterprises

a result of a recent change in his employment, these depositions could not be held until February and March 2010.

As has been shown in detail, infra, the recent depositions of the Firestone employees made it clear that there is sufficient evidence in this case to warrant vaulting the bar of the Workers' Compensation Act, N.J.S.A. 34:15-8, et seq. and holding Firestone liable for all or part of the claim asserted by Plaintiff against TMC.

Furthermore, this motion to implead TMC Electrical into this case is being made at this date due to the recent decision by the New Jersey Supreme Court in Nicastro v. McIntyre Machinery America, Ltd., 201 N.J. 48 (2010) which provides that a foreign manufacturer can be subject to personal jurisdiction in New Jersey by knowingly placing a product in the stream of commerce with intent for it to be marketed and sold nationally. Obtaining personal jurisdiction over the foreign manufacturer, assuming service will be made through international accord, will bring all potentially viable parties into the litigation.

   B.  Impleading Firestone and TMC Electrical as Third-Party
       Defendants Will Not Complicate the Issues at Trial.

TMC Electrical is the manufacturer of the Trouble Light, while Firestone, Plaintiff's employer, was the entity that purchased the Trouble Light from Carquest and made it available for use by Plaintiff and his co-workers. Accordingly, instead

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN MICHAEL MECHIN,<br><br>　　　Plaintiff,<br><br>vs.<br><br>CARQUEST CORPORATION, CARQUEST PRODUCTS, INC.; TMC ENTERPRISES; VOLTEC INDUSTRIES; TASCO; BWP DISTRIBUTORS, INC.; and ABC CORPORATIONS 1-10 (said names presently unknown and factitious),<br><br>　　　Defendants, | CIVIL ACTION NO.: 07-5824(HAA)<br><br><br><br>DEFENDANTS TASCO AND TMC ENTERPRISES' RESPONSES TO PLAINTIFF'S FIRST SET OF SUPPLEMENTAL INTERROGATORIES |

Defendants Tasco Industries, Inc. ("Tasco") and TMC Enterprises ("TMC") (collectively "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiff's First Set of Supplemental Interrogatories as follows:

## OBJECTIONS TO DEFINITIONS

1. Defendants object to Plaintiff's definition of "Document", "documents" and "documentations" to the extent these terms as defined are overbroad, unduly burdensome, unlimited in time and scope, and seek information that is neither relevant to the subject matter of the pending litigation nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the extent the terms as defined could require the disclosure of privileged information protected by the attorney client privilege, attorney work product and information obtained and/or prepared in anticipation of litigation.

2. Defendants object to Plaintiff's definition of "Communication" and "communications" to the extent these terms as defined are overbroad, unduly burdensome and seek information that is

RESPONSES TO PLAINTIFF'S SUPPLEMENTAL INTERROGATORIES

1. Describe the relationship between the responding defendant and each of the non-responding defendants. Attach all documents supporting the stated relationships.

**ANSWER:** Defendants object to this interrogatory and the corresponding request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that the term "relationship" is not defined or limited in scope or time. Without waiving any objections, and assuming that the interrogatory is seeking information relating to corporate structure between the various defendants, Defendants Tasco and TMC Enterprises answer as follows: Defendant Tasco Industries Inc. is a California Corporation, and Defendants TMC Enterprises and Voltec Industries are subsidiaries of Tasco Industries, Inc. By way of further response, Defendants Tasco Industries, Inc. and TMC Enterprises have no corporate relationship with co-defendants Carquest Corporation, Carquest Products, Inc., or BWP Distributors, Inc. The Articles of Incorporation of Tasco Industries, Inc. are attached hereto.

2. Describe the relationship between the responding defendant and TMC Electrical Products Co., LTD. Attach all documents supporting the stated relationship.

**ANSWER:** Defendants object to this interrogatory and corresponding request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that the term "relationship" is not defined or limited in scope or time. Without waiving any objections, and assuming that the interrogatory is seeking information relating to the corporate structure between Defendants Tasco Industries, Inc. and/or TMC Enterprises and TMC Electrical Products, Co., LTD; Defendants Tasco Industries, Inc. and TMC Enterprises state that

4

==there is no corporate structure between Tasco and/or TMC Enterprises and TMC Electrical Products, Co., LTD.==

By way of further response, and with respect to the drop light product at issue in this matter and without knowledge of the exact production date of the product, the general process from receipt of the purchase order to production would have been that TMC Enterprises received the purchase order from Voltec Industries, then TMC Enterprises would have placed the purchase order with Centraluxe Enterprises, LTD, a Hong Kong corporation, which then placed the purchase order with TMC Electrical Products, Co., LTD. TMC Enterprises has had a working relationship with TMC Electrical Products, Co., LTD for over twenty years, but ==neither Tasco Industries, Inc. nor TMC Enterprises have an ownership interest in TMC Electrical Products, Co., LTD.==

3. Identify who pays the employees of the responding defendant.

**ANSWER:** Defendant Tasco Industries, Inc. has no employees. Defendant TMC Enterprises pays the employees of that company.

4. Identify who pays the employees of TMC Electrical Products Co., LTD.

**ANSWER:** Based upon information and belief, TMC Electrical Products Co., LTD pays its employees.

5. Advise whether the responding defendant shares any bank accounts with each of the non-responding defendants. Identify all such accounts.

**ANSWER:** Defendants Tasco Industries, Inc. and TMC Enterprises maintain separate bank accounts, and do not share any bank accounts with the non-responding defendants.