UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(NEWARK VICINAGE)

| | |
|---|---|
| JEAN MICHAEL MECHIN<br>vs.<br>CARQUEST CORPORATION;<br>CARQUEST PRODUCTS, INC.; TMC<br>ENTERPRISES; VOLTEC INDUSTRIES;<br>TASCO; BWP DISTRIBUTORS, INC.; and<br>ABC CORPORATIONS 1-10 (said names<br>being unknown and fictitious) | CIVIL ACTION<br><br>NO. 2:07-cv-05824-GEB-ES |

**CARQUEST DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

MINTZER, SAROWITZ, ZERIS, LEDVA
& MEYERS, LLP
2070 Springdale Road, Suite 400
Cherry Hill, New Jersey 08003
(856) 616-0700
Attorney for Defendants, BWP, Distributors, Inc.,
Carquest Corporation and Carquest Products, Inc.

On the Brief:
John H. Maucher, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

LEGAL BRIEF......................................................................... 1

    I.    PLAINTIFF'S OPPOSITION ARGUMENT THAT THE CARQUEST DEFENDANTS ARE NOT ENTITLED TO THE "INNOCENT SELLER' DEFENSE IS WITHOUT ANY BASIS AND MUST BE REJECTED………..…………………….. 1

    a.  Plaintiff's Argument That the Affidavit Requirement was not met and Therefore Defendants Cannot Make an Innocent Seller Argument Must be Rejected…………………………………….. 2

    b.  Plaintiff's Argument That the Carquest Defendants Exercised Significant Control Over the Product Does Not Have Any Support and Must be Rejected…………………………………. 4

    II.   PLAINTIFF'S OPPOSITION ARGUMENT AS TO DESIGN DEFECT MISCHARACTERIZES THE TESTIMONY OF THE EXPERTS AND PARTY WITNESSES AND SHOULD NOT BE SUFFICIENT TO DEFEAT SUMMARY JUDGMENT…………. 5

    III.  PLAINTIFF'S OPPOSITION ARGUMENT AS TO THE WARNING DEFECT MUST BE REJECTED …………………….. 6

    IV.  PLAINTIFF'S ARGUMENTS AS TO THE PROXIMATE CAUSE ARE NOT SUFFICIENT TO DEFEAT SUMMARY JUDGMENT………………………………………………….. 7

CONCLUSION ………………………………………………………….8

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

Claypotch v. Heller, Inc. 360 N.J.Super. 472, 486 (App. Div. 2003)................ 2, 3

**Statutes**

New Jersey Products Liability Act ("NJPLA"); N.J.S.A. 2A:58C-9............ 1,2,3,4,5

## **LEGAL BRIEF**

I.  PLAINTIFF'S OPPOSITION ARGUMENT THAT THE CARQUEST DEFENDANTS ARE NOT ENTITLED TO THE "INNOCENT SELLER" DEFENSE IS WITHOUT ANY BASIS AND MUST BE REJECTED.

Plaintiff's argument that the Carquest defendants are not "innocent sellers" entitled to the protection of the New Jersey Products Liability Act. ("NJPLA") is without support and must be rejected. In support of plaintiff's opposition were emails wherein plaintiff's counsel (Mr. Mendelson) and counsel for TMC (Mr. Shea) explored whether TMC Enterprises was an agent of, or part of TMC Electrical Products (Shenzhen) Company, Ltd. Mr. Mendelson called a number on the UL application and spoke with a Chris Sullivan who **confirmed** he worked for TMC Electrical Products (Shenzhen) Co., Ltd (the Chinese manufacturer). Mr. Sullivan then provided an email address for TMC Enterprises (defendant). Mr. Shea (counsel for TMC and TASCO) responded to Mr. Mendelson with a denial as to any connection between the two companies other than "TMC Enterprises served as the **agent** for TMC Electrical Products (emphasis added) (See Exhibit B to Mendelsohn Cert.). Based on the email exchange, plaintiff claims the defendants are not entitled to the "innocent seller" defense, although it is clear that defendant TMC is at least an agent for the Chinese manufacturer. That is enough to allow Carquest defendants to assert the innocent seller defense under the NJPLA.

We would ask the Court to consider the arguments, undisputed facts, and exhibits with defendants' Certification with their Summary Judgment Motion, as well as the arguments, testimony, and exhibits attached in support of their Opposition Brief to plaintiff's Summary Judgment Motion. Specifically, we direct the Court's attention to Tom Miller's testimony about his companies' involvement with the Chinese

1

manufacturer (Miller dep. as Exhibit N to Maucher Certif. with Summary Judgment motion), his company's website (Attached as Exhibit B, the TMC Enterprises website, to the Maucher Certif. in opposition to plaintiff's Summary Judgment Motion), and the fact that he is listed as an agent for the Chinese manufacturer (Attached as Exhibit D, the UL application, to the Maucher Certif. in opposition to plaintiff's Summary Judgment Motion) in the UL application for testing and listing of the product.

Also, upon learning of the lawsuit Miller went and inspected the product and confirmed that it was indeed a product his company manufactured. (Miller dep. 53:15-55:9) The Carquest defendants submit that Miller's companies (defendants TMC/Tasco), are the manufacturer of the product, or at a minimum Miller acted as an agent for the Chinese Manufacturer (Miller dep. 71:16-72:6 & Exhibit D) and that is enough for Carquest to claim the defense of an innocent seller.

### a. Plaintiff's Argument That the Affidavit Requirement was not met and Therefore Defendants Cannot Make an Innocent Seller Argument Must be Rejected.

Plaintiff made the argument that all defendants should be estopped from asserting the defense of "innocent seller" under the NJPLA, because no one provided an Affidavit as to the identity of the manufacturer. That argument must fail as the requirement for an Affidavit under the NJPLA is to show that "due diligence shall be exercised in providing the plaintiff with the correct identity of the manufacturer or manufacturers." Claypotch v. Heller, Inc. 360 N.J.Super. 472, 486 (App. Div. 2003) Clearly the Act is intended to provide trustworthy notice of the real identity of the manufacturer to a party so they know who to sue and so they would not be misled until it was too late to sue the responsible party (as well as to prevent passage of time that makes discovery difficult and to further

judicial economy). <u>Claypotch v. Heller, Inc.</u> 360 N.J.Super. 486.

In this case, Tom Miller provided testimony under oath as to his company's role in the manufacturing of the product, plus there is a UL application with his name as the agent and that application identifies the Chinese manufacturer. The NJPLA mentions a requirement for an "Affidavit" but the case law speaks to the need for "due diligence in amending his complaint to identify the true name of a fictitiously named manufacturer-defendant." <u>Claypotch</u> at 486. Also, "seller's early revelation of the manufacturer's identity enables a plaintiff to conduct discovery…" <u>Id.</u> "…based on its certification of the manufacturer's identity…" <u>Id.</u> "In this case, Heller did not send an affidavit to plaintiff certifying …but plaintiff was aware … that FICEP was the manufacturer, and plaintiff could have joined FICEP as a direct defendant any time thereafter." <u>Id.</u> at 487. All phrases from <u>Claypotch</u> above make it clear that whether or not it is by way of an affidavit, or a revelation, or notice, or certification, or other manner of identification, a party must be aware of the identity of the manufacturer for a defense of innocent seller.

It would be impossible for plaintiff to claim they were unaware of the identity of the Chinese manufacturer (if the jury finds that TMC/Tasco are not the manufacturer as well) since Miller testified under oath as to the manufacturer. Also, the UL documents produced and discussed at the deposition of UL representative Herschbach identified the Chinese manufacturer and made a case that TMC/Tasco are either the manufacturer or their agent. Clearly the plaintiff had notice of the manufacturer more than one year before discovery ended. The NJPLA has a "due diligence requirement" (<u>Id.</u> at 487), not an "Affidavit" requirement. Defendants are entitled to pursue dismissal and defense pursuant to the NJPLA innocent seller defense in spite of the lack of a signed Affidavit as

3

to the identity of the manufacturer since that information was provided during each and every phase of discovery, and no protestations to the contrary by Tom Miller should remove that defense as a viable defense for the Carquest defendants.

### b. Plaintiff's Argument That the Carquest Defendants Exercised Significant Control Over the Product Does Not Have Any Support and Must be rejected.

Plaintiff's argument that the product was defective due to marketing is a red herring as the NJPLA does not assess strict liability against an entity for "marketing", and plaintiff has no evidence that marketing played any role in this case. The only portion of the NJPLA that could possibly apply to the Carquest defendants relates to their potential "exercise of significant control over packaging or labeling" of the product. Plaintiff instead focused on the "marketing" of the product, in spite of the lack of evidence that the product was ever **sold** to Denville Firestone by any of the defendants. Plus, there is not one shred of testimonial evidence that Firestone relied upon marketing, product claims, a belief that the term "professional-duty" made the product suitable for Firestone (packaging & labeling), or that the UL label had anything to do with the product being used at Denville Firestone on the date of the accident. Furthermore, whereas plaintiff argued in his opposition brief that the product was only safe for residential use; experts and UL representatives testified that the product was (or could be) suitable for much more than strictly residential use.

Plaintiff's argument that the marketing was a defect supporting a product liability claim in this case misses the mark as the Statute does not apply strict liability for marketing. Plus, plaintiff's opposition does not give the Court anything to review in this matter as to what marketing specifically targeted the Denville Firestone; how that

4

marketing led to their purchase and use of the product; and whether that supports a products claim under the NJPLA.

As stated above, marketing played no role in this case and is irrelevant to the Court's analysis in the instant summary judgment motion. Since the NJPLA does not state that a defendant could be liable for "marketing and selling the product"; only that they could be liable if they exercise some significant control over the "packaging or labeling of the product". Plaintiff's argument in the Opposition Brief at pgs. 7 & 8, which all related to the marketing or the target purchaser of the product, are irrelevant to the Court's analysis and does not support their position that the defendants exercised significant control over the product when evaluating a product liability claim.

II.   PLAINTIFF'S OPPOSITION ARGUMENT AS TO DESIGN DEFECT MISCHARACTERIZES THE TESTIMONY OF THE EXPERTS AND PARTY WITNESSES AND SHOULD NOT BE SUFFICIENT TO DEFEAT SUMMARY JUDGMENT.

Plaintiff's opposition focuses on limited testimony whereby most experts agree that the product in question should not have been used by Firestone at their Denville location because of the conditions which existed at that location and the manner in which Firestone operated. As set forth at length in the original summary judgment application of the Carquest defendants, the product can be safely used by many commercial garages if used in conformity with the warnings and with some common sense.

Plaintiff's argument that the product was not safe for use in any commercial automotive repair shop is a misstatement of the evidence and is misleading to the Court. The product is suitable and safe for use in a commercial garage under circumstances which the commercial garage must meet to be in compliance with the applicable codes

5

which govern their business. In regard to the argument that reasonable alternative designs exist; Carquest argued, and supplied to the court pages from their catalogs as well as testimony of witnesses, that other products were equally available to Denville and other consumers such as fluorescent lights on reels for about the same price. However, the choice was made by someone to bring the product in question into the Denville Firestone service bay area to meet their need for portable light. Expert testimony from various experts agree that the fluorescent trouble lights still did not meet Firestone's requirements under the applicable codes, and that nothing short of explosion-proof equipment or changing the manner in which they operated would satisfy their requirements as a Class I, hazardous location.

### III.  PLAINTIFF'S OPPOSITION ARGUMENT AS TO THE WARNING DEFECT MUST BE REJECTED.

Plaintiff argued that the warning on the reel itself could not be read from floor level, but that misses the point that the warning on the reel was for the purchaser and the installer of the product. Firestone is a national commercial entity which must operate under certain codes. The warnings were clear and unambiguous for a sophisticated commercial operation such as Denville Firestone.

The argument that the warnings were insufficient is yet another red herring as all employees of Denville, including the plaintiff, knew the incandescent lights should not be used in proximity to flammable liquids. The most glaring example was the warning from the plaintiff's boss, Frank Stefanack only minutes before the accident to move the light or be careful with the light as they had a gas tank down.

Furthermore, given the plaintiff's contention that the warnings were inadequate

6

because they failed to notify Denville Firestone that the product should not have been used in their locations; there is no indication that anyone at Firestone would have acted differently with a different warning. All Firestone witnesses testified that they had a belief that there was the potential for gasoline vapors to ignite if the hot light got too close to the gasoline. Although the Court is now aware that the plaintiff has moved away from that theory of ignition, Firestone employees had that perception of danger regardless of the warnings. Apparently, plaintiff would require that the product have a warning not to drop a 200 pound gas tank full of gasoline directly onto the lit light, as that would be the only warning that would be relevant to this accident. Obviously there is no such duty. The warning was not defective and the warnings played absolutely no role in the happening of this accident.

### IV. PLAINTIFF'S ARGUMENTS AS TO THE PROXIMATE CAUSE ARE NOT SUFFICIENT TO DEFEAT SUMMARY JUDGMENT.

Plaintiff's argument in this case has been that the product should have never been used at Denville Firestone and because the product was used and was involved in a fire, that all defendants are negligent. Plaintiff starts at the end and assumes liability.

It is plaintiff's burden of proof to put forth what negligent actions by the Carquest defendants were the proximate cause of the accident and the plaintiff's injuries. Nothing in plaintiff's Opposition Brief impacts the Carquest defendants' Summary Judgment Motion. Although plaintiff spent considerable space in his opposition brief devoted to improper marketing; that is irrelevant to the Court's analysis for summary judgment as it would be irrelevant for the jury's ultimate analysis of proximate cause. As stated above, an innocent seller who does not exercise significant control over the packaging or labeling of a product (apart from their role as seller) is entitled to dismissal. The Act and

7

case law do not impose liability for marketing; even when there is some proof that marketing played a role in the accident (which plaintiff's proofs do not do). Even assuming the Carquest defendants placed the phrase "Professional-Duty" on the product; that is not nearly enough to overcome their summary judgment motion as plaintiff has zero proof that phrase led to any action by any party (purchase, installation, reliance, expectations or suitability, etc.), or was a proximate cause of plaintiff's injuries.

## CONCLUSION

Based upon the foregoing, as well as the prior Brief submitted on behalf of all Carquest defendants, we respectfully submit that all Counts against all Carquest Defendants should be dismissed pursuant to summary judgment.

MINTZER, SAROWITZ, ZERIS, LEDVA & MEYERS
Attorneys for defendants Carquest Corp. Carquest Products, Inc. and BWP Distributors, Inc.

_____
JOHN H. MAUCHER, ESQUIRE (JM 7892)

Dated: April 12, 2011