**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN MICHEL MECHIN, | Civil Action No. 07-cv-5824 (SDW)(MCA) |
| Petitioner, | |
| v. | |
| CARQUEST CORPORATION, CARQUEST PRODUCTS, INC.; TMC ENTERPRISES; VOLTEC INDUSTRIES; TASCO; BWP DISTRIBUTORS, INC.; AND ABC CORPORATIONS 1-10 (said names presently unknown and fictitious, | **OPINION**<br><br>February 28, 2012 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendants Carquest Corporation, Carquest Products, Inc., and BWP Distributors, Inc.'s Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 against Defendant Voltec Industries. Also before this Court is Defendant Voltec Industries' Cross-Motion for Summary Judgment and Defendants TMC Enterprises and Tasco's Cross-Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, against Defendants Carquest Corporation, Carquest Products, Inc., and BWP Distributors, Inc. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** the motion of Carquest Corporation, Carquest Products, Inc., and BWP Distributors as well as the motion of TMC Enterprises and Tasco. Also, this Court **GRANTS** Voltec Industries' motion in part and **DENIES** in part as **MOOT**.

## I.     FACTS

### a.     _Parties Involved_

Non-party TMC Electrical Products of China ("TMC Electrical") is a manufacturing company based in Shenzhen, China where the "Professional-Duty Trouble Light on Reel" (hereinafter "Trouble Light") was manufactured. (Certification of Nicole L. Strauss-Russo ("Strauss-Russo Cert."), Ex. C, p. 57:15-18.)

Defendant TMC Enterprises ("TMC/Tasco"[1]) is a marketing company that also acts as TMC Electrical's sales liaison in the United States. They also act as a medium between TMC Electrical and Underwriter's Laboratories ("UL") in order to get the former's products into the United States. (Certification of Scott Haworth ("Haworth Cert."), Ex. I, p. 22:3-17, Ex. H, pp. 71:16-72:13.)

Defendant Voltec Industries ("Voltec") is a distribution and supply company which purchased the Trouble Light from TMC Enterprises and in turn sold it to Defendant Carquest Products Inc. ("CPI"). (Strauss-Russo Cert., Ex. F, p. 36:1-3.)

CPI is a "location that distributes product to Carquest warehouses." (Certification of John H. Maucher ("Maucher Cert."), Ex. L, p. 15:8-10.)  CPI placed the Trouble Light in their service lines catalog and later packaged and sold it to Defendant BWP Distributors Inc. ("BWP"). (_Id._, Ex. L, p. 40:7-12.)

BWP is one of four members of Defendant Carquest Corporation. BWP is a "wholesale retail and distributor of auto parts." BWP sold the Trouble Light to a Carquest store that was within its distribution territory. (Strauss-Russo Cert., Ex. G, p. 6:16-18.)

---

[1] Defendants TMC Enterprises and Tasco filed briefs jointly and are collectively referred to as "TMC/Tasco" in this opinion.

The Trouble Light was later allegedly sold by Carquest to Firestone, and eventually ended up at a Firestone automobile repair facility located in Denville, New Jersey. (*Id.* at 18:4-9, Pl.'s First Am. Compl. ¶ 11.)

**b.**    *Underlying Incident*

On or about July 3, 2007, while employed at the Firestone automobile repair facility in Denville, Plaintiff Jean Michel Mechin ("Plaintiff") suffered second and third-degree burns as a result of an accident that occurred while he was in the process of servicing an automobile. (Haworth Cert., Ex. C., p. 92:11-14.) As he was working on the automobile, a gas tank that was being siphoned on a metal stand became unstable and began to spill gasoline on the floor. (Haworth Cert., Ex. C, pp. 116:15-118:22; Ex. G, pp. 93; 101.)  Plaintiff sought to intervene and the tank fell from the stand and began to spill gasoline on Plaintiff's clothes. (*Id.*)  Plaintiff then came into contact with the Trouble Light which caused gasoline from the automobile's tank to ignite and caused Plaintiff to catch on fire. (Pl.'s First Am. Compl., First Count ¶12.)  This resulted in burns on forty-two percent of Plaintiff's body. (*Id.*)

The Trouble Light had a warning label stating that: (1) the product was not to be used "near flammable vapors," (2) it was for "general use", and (3) it was not supposed to be used in hazardous locations, such as commercial garages, as required by United States N.E.C. Article 511. (Certification of Scott Haworth, Ex. K, Ex. L.)

Carquest[2] intended to market the Trouble Light to commercial garages, such as the Denville Firestone, and specifically intended for the Trouble Light to be used in the servicing of automobiles or trucks.

---

[2] "Carquest" in this opinion refers to Defendants Carquest Corporation, CPI, and BWP collectively.

**c.**     *Underlying Claim*

Plaintiff filed his First Amended Complaint on April 3, 2008, against all defendants claiming that Defendants were strictly liable for damages under the New Jersey Products Liability Act, N.J.S.A 2A:58C- 1 et seq. (Pl.'s First Am. Compl., First Count ¶ 15.) Plaintiff further alleged that Defendants breached their express warranties and were therefore liable for damages. (*Id.*, Second Count ¶¶ 2-3.)

Carquest sought indemnification and defense from Voltec for the underlying action. (Maucher Cert., Ex. D.)  Voltec initially denied Carquest's demand for legal defense and indemnification because Voltec wanted to first determine whether the Trouble Light was actually a Voltec product or whether it was altered or changed from its original condition, thereby making it not a Voltec product.  (Maucher Cert. Ex. E.)[3]  Eventually, on April 3, 2009, Hartford Casualty Insurance Company ("The Hartford"), Voltec's insurance carrier, wrote to Carquest stating that it would indemnify and defend Carquest against any and all of Plaintiff's claims.  (Maucher Cert. Ex. F.)  The Hartford, however, made a reservation regarding coverage if it was later determined that the product at issue was not a Voltec product.  (*Id.*)  Later, on April 17, 2009, The Hartford agreed to accept the conditions and limitations contained in Voltec's policy with The Hartford. (Maucher Cert. Ex. G.)  On July 15, 2009, a senior analyst from Ohio Casualty's Claim Department ("Ohio Casualty"), Carquest's insurance carrier, sought confirmation from Voltec of The Hartford's acceptance of Carquest's tender demand for defense and indemnification, and of the policy limits under Voltec's policy.  (Maucher Cert. Ex. H.)  On August 10, 2009, a claim consultant from The Hartford contacted Ohio Casualty and confirmed the sought after information.  (Maucher Cert. Ex. I.)

---

[3] Voltec argued that Carquest provided the Court with a copy of this exhibit, but did not file it on the docket.  Voltec argues that the Exhibit should not be part of the record.  However, the Court believes that this was a mere oversight on the part of Carquest.

**d.**    *Procedural History*

While motions for summary judgment were pending, Voltec, Carquest, and TMC/Tasco reached independent settlements with the Plaintiff regarding all claims.  (Dkt. No. 153.) Defendants reserved the right to litigate all cross-claims for both common law and contractual indemnification. The settlement totaled $4,700,000.

Voltec settled in April 2011 for a total of $900,000. TMC/Tasco and Carquest both settled with Plaintiff in May 2011 for $1,750,000 and $2,050,000 respectively. (Certification of Scott Haworth ¶ 4.)

On July 15, 2011, TMC/Tasco and Carquest filed motions for summary judgment with regard to claims for indemnification from other parties. (Dkt. Nos. 163-64.)  Carquest moved for summary judgment in favor of granting their indemnification cross-claims against TMC/Tasco and Voltec. TMC/Tasco moved for summary judgment in favor of granting their indemnification claim against Carquest. Voltec followed by filing a motion for summary judgment seeking to dismiss the indemnification claims of Carquest and TMC/Tasco.[4] (Dkt. No. 165.)

## II.    BASIS OF INDEMNIFICATION CLAIMS

Carquest bases its indemnification claims against Voltec on contractual and common law grounds. Voltec agreed in a contract (the "Contract") to indemnify Carquest from any claims resulting from "alleged or actual defects of any kind in the design, manufacture, preparation or handling of [Voltec's] Products." (Maucher Cert., Ex. C, p. 2, ¶ 2.4.) Carquest argues that pursuant to the Contract between Carquest and Voltec "the parties clearly and expressly provided that Voltec would indemnify Carquest for its own negligence" arising out of any alleged or actual defects in the design, manufacture, preparation or handling of the products. (Carquest's

---

[4] It appears that TMC/Tasco originally indicated that they would also file a summary judgment motion for indemnification against Voltec as well. (*See* Haworth Cert., Ex. U1) Because of this, Voltec included TMC/Tasco in their motion, despite the fact that TMC/Tasco chose not to go forward with their claims against Voltec.

Summary Judgment Br. 15.) Carquest further alleges that under both New Jersey and Indiana law the Contract should be interpreted to allow for indemnification for its negligence. The Contract itself, however, states that it "shall be governed by and construed and enforced in accordance with the laws . . . of Indiana." (Maucher Cert., Ex. C, p. 5.)

Furthermore, Carquest argues that Voltec and TMC/Tasco are liable under common law because "parties held liable for products for which they had no direct responsibility may obtain redress from the culpable party." (Carquest's Summary Judgment Br. 22.)  Carquest asserts that it has no independent liability and that "[t]he shifting of the risk up the distribution chain to the actual manufacturer of the offending product fulfills the basic goal of distributing the risk to the party best able to bear it." (*Id*. at 23.)

TMC/Tasco claims that they are owed indemnification from Carquest under the theory that they were not at fault with regard to any aspects of the Trouble Light and that instead, Carquest was. (TMC/Tasco's Summary Judgment Br. 2-5.)  TMC/Tasco argues that Carquest should indemnify them because they were not involved with the marketing or sales of the Trouble Light and because Carquest was solely responsible for the accident. (*Id*.) Voltec denies all of Carquest's claims and argues that the common law and the law of both Indiana and New Jersey support dismissal of Carquest's indemnification claims. (Voltec's Summary Judgment Br. 11, 23.)

## III.   LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact.  *Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

## IV.   DISCUSSION

### a.   <u>*Carquest's Claim for Contractual Indemnification*</u>

In its motion for summary judgment, Carquest seeks summary judgment on five bases: (1) there is no dispute that Voltec accepted Carquest's demand for indemnification, (2) Voltec and The Hartford should be equitably estopped from litigating the indemnification claim and coverage issues because the two entities controlled Carquest's defense in the underlying action,

7

(3) the Contract as well as case law support indemnification, (4) indemnification is proper pursuant to the doctrine of common law indemnification, and (5) indemnification is proper because Carquest has no active independent liability.  Carquest's arguments fail at every turn.

      **i.**     *Voltec's Agreement to Indemnify Carquest*

Concerning Voltec's alleged undisputed acceptance to indemnify Carquest, there is actually a dispute regarding Voltec's agreement to indemnify.  In its brief, Carquest equates an agreement by The Hartford to indemnify and defend Carquest to an agreement by Voltec to do the same.  (*See* Carquest's Summary Judgment Br. 4.)  However, Carquest cannot make such a conclusory leap.  The Hartford, as an insurance carrier, cannot contractually bind Voltec into an agreement. *See Makris v. Amboy Bank*, No. 08-2691, 08-2692, 2008 U.S. Dist. LEXIS 90333, at *14 (D.N.J. Oct. 23, 2008).  The Hartford's agreement to defend and indemnify Carquest against any and all claims of Mechin was an agreement between The Hartford and Carquest, not between The Hartford, Carquest, and Voltec.  Therefore, the Hartford's intention or willingness to defend and indemnify Carquest cannot be imputed to Voltec.

      **ii.**     *Equitable Estoppel*

Regarding Carquest's argument concerning equitable estoppel, the logic behind Carquest's argument is again flawed.  Carquest argues in its brief that Voltec should be equitably estopped from litigating the indemnification claim and coverage issues because Voltec and The Hartford controlled Carquest's defense in the underlying action.  (Carquest's Summary Judgment Br. 7.)  However, as discussed above The Hartford agreed to defend Carquest, not Voltec.  Therefore, Voltec did not control Carquest's defense and accordingly, Carquest's argument concerning equitable estoppel cannot stand.

**iii.**   _Carquest's Claim Indemnification_

Regarding Carquest's reliance on the Contract and case law apropos its claim for indemnification, Carquest seeks to have this Court analyze the facts liberally when precedent dictates otherwise.  The pertinent portion of the indemnification provision in the Contract states:

> The Supplier shall indemnify and hold harmless the Company CARQUEST Corp. and each Member against any and all liabilities, losses, damages, costs, and expenses, including court costs and reasonable attorney's fees, that the Company, CARQUEST Corp. or any Member may incur or sustain by reason of any claim, demand, legal actions or judgment based upon or arising out of . . . any alleged or actual defects of any kind of design, manufacture, preparation, or handling of the Products; <u>provided</u> that the Supplier shall not be liable for the gross negligence or will misconduct of the Company, CARQUEST Corp. or any Member.

(Maucher Cert., Ex. C, p. 2, ¶ 2.4.)  The Contract language itself does not state that Voltec agreed to indemnify Carquest for Carquest's own negligence.  Instead, the Contract restricts Voltec's duty to indemnify to "any claim, demand, legal actions or judgment based upon or arising out of . . . any alleged or actual defects of any kind of design, manufacture, preparation, or handling of the Products; <u>provided</u> that [Voltec] shall not be liable for the gross negligence or will misconduct of [Carquest]."  Therefore, on its face, the Contract does not require Voltec to indemnify Carquest for Carquest's negligent conduct regarding the underlying action.

Concerning Carquest's reliance on case law, Carquest argues that, pursuant to the Contract, Indiana law should apply to the interpretation of the Contract.  Carquest also argues that, through the indemnification provision, Voltec agreed to indemnify Carquest for its (Carquest's) own negligence.  Under Indiana law, "[c]ontracts which provide indemnification for one's own negligence may[,] if knowingly  and willingly made, be valid and enforceable[.]" _Vernon Fire & Cas. Ins. Co. v. Graham_, 336 N.E. 2d 829, 831 (Ind. Ct. App. 1975)(citing _Loper v. Standard Oil Co._, 211 N.E. 2d 797 (Ind. App. 1965)).  However, contractual provisions providing for such indemnification are "strictly construed and will not be held to provide

9

indemnity unless so expressed in 'clear and unequivocal' terms." *Norkus v. Gen. Motors Corp.*, 218 F. Supp. 398, 399 (S.D. Ind. 1963). "[I]n order to reflect a knowing and willing acceptance of such a harsh burden, the indemnification clause must expressly state, in clear and unequivocal terms, that the [indemnitor] agrees to indemnify the [indemnitee] against the [indemnitee's] own negligence."[5] *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E. 2d 142, 146 (Ind. Ct. App. 1991).

"Courts disfavor such indemnification clauses because to obligate one party to pay for the negligence of the other party is a harsh burden which a party would not lightly accept." *Moore Heating & Plumbing, Inc.*, 583 N.E. 2d at 145 (citing *Ogilvie v. Steele*, 452 N.E.2d 167, 170 (1983)). "The concern with the language of an indemnity clause in this area is that it not only define the area of application, that is, negligence, but also define the cause of damages in terms of physical or legal responsibility, that is, to whom the clause applies." *Id.* (citing *Indiana State Highway Comm'n v. Thomas*, 346 N.E. 2d at 260 (quoting *Norkus*, 218 F. Supp. at 398)). "For this reason, the language of the indemnification clause must reflect the indemnitor's knowing and willing acceptance of the burden and must express the burden in clear and unequivocal terms." *Ogilvie*, 452 N.E.2d at 170. *Moore* goes the extra step of providing an example of contractual language that is insufficient to meet the "clear and unequivocal" standard:

> For example, if a clause simply states that a subcontractor shall indemnify a general contractor for any negligence which arises from the job, it is sufficient to show that the clause applies to negligence but is insufficient to inform the subcontractor that it must indemnify the general contractor for acts of the general contractor's own negligence. The claim of negligence which arises from the job

---

[5] Oddly enough, in *Norkus*, the court stated that "[a]s a general rule, it is not required that there be an express reference to the negligence of the indemnitee." *Norkus*, 218 F. Supp. at 399. "However, in [] cases in which the 'clear and unequivocal' standard [has] been applied, the [contracts have] contained no express reference to the indemnitee's negligence. Indemnification was nevertheless not permitted." *Indiana State Highway Comm'n. v. Thomas*, 346 N.E. 2d 252, 260 (Ind. Ct. App. 1976).

could have been caused by the negligence of the general contractor, the subcontractor, third persons, or a combination of them. This is the very reason the indemnity for the indemnitee's own negligence must be specifically, not generally, prescribed.

*Moore*, 583 N.E.2d at 145-46 (internal citations omitted).

Considering the Indiana jurisprudence on the issue of indemnification for one's own negligence, and more specifically, the test enunciated in *Moore,* this Court now turns to the contract provision at issue.  The Contract seems to fail both parts of the *Moore* test.  Regarding the first step, the indemnification clause does not expressly define negligence as an area of application in clear and unequivocal terms.  In *Moore*, the court concluded that the indemnification clause did expressly define negligence as an area of application in clear and unequivocal terms because the clause spoke of "liability and of claims or disputes for damages from any cause directly or indirectly relating to any action or <u>failure to act</u> by Moore, whether or not Huber contributed to the alleged wrongdoing or is liable due to a nondelegable duty." *Moore*, 583 N.E. 2d at 146 (emphasis added).  Here, there is no language that clearly and unequivocally defines negligence as an area of application.  Instead, the provision at issue limits the area of application to product defects.  Carquest argues that language in the provision such as "gross negligence" and "willful misconduct" meets the test for step one.  (Carquest's Summary Judgment Br. 14.)  Carquest's argument is unavailing.

Regarding step two, Carquest argues that the language in the indemnification clause exempting coverage for gross negligence and willful misconduct unmistakably implicates Voltec's intention to indemnify Carquest for its own negligence.  (Carquest's Summary Judgment Br. 14.)  To the contrary, the indemnification clause's reservation of indemnifying Carquest for product defects that result from the independent conduct of Carquest, using the terms gross negligence and willful misconduct, imply that Voltec did not wish to indemnify

Carquest for anything beyond defective products where the defect could be traced up the distribution chain.  It is clear that the Contract does not expressly state, in clear and unequivocal terms, that it applies to indemnify Carquest for negligence which is the physical or legal responsibility of Carquest. [6]

**iv.**   *Common Law Indemnification*

Carquest argues that since this is a case involving products liability, and it is undisputed that Carquest did not design, manufacture, submit the product to UL for testing, or draft warnings, common law indemnification should be granted.  (*See* Carquest's Summary Judgment Br. 24.)  Carquest's argument is based on the premise that Voltec was found liable for products liability.  (*See id.*)  Since there is no dispute that the Trouble Light was not defective, Carquest's argument cannot stand.

**v.**   *Independent Liability*

Carquest argues that it is entitled to indemnification pursuant to case law; however, Carquest fails to cite to any case law in its brief.  For this reason, this Court will not entertain this argument.

**vi.**   *TMC/Tasco's Common Law Indemnification Claim Against Carquest*

TMC/Tasco brings a common law claim for indemnification against Carquest under the theory that TMC/Tasco was "free from fault" and Carquest was "solely responsible" for the losses alleged by Plaintiff. (TMC/Tasco Summary Judgment Br. 3.) TMC/Tasco cites *Adler's Quality Bakery v. Gaseteria, Inc.*, 32 N.J. 55 (1960), to support its claim.  *Adler's Quality Bakery* states that "a showing of another's sole responsibility for the losses will entitle the [faultless

---

[6] The Court also notes that New Jersey law applies the same "clear and unequivocal" standard for negligence in this area. *See e.g.*, *Mantilla v. NC Mall Assocs.*, 167 N.J. 262, 269 (2001)("[A] contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.")

party] to indemnity from the [party which] actually caused the injuries originally complained of." *Id.* at 79. TMC/Tasco's claim beseeches a finding of liability regarding the underlying settled action. *Central Motor Parts Corporation v. E.I. DuPont deNemours and Company, Incorporated*, 251 N.J. Super. 34 (Law Div. 1989) ("*Central Motor Parts*") is instructive on this issue. However, before delving into *Central Motor Parts*, it is important to note that there is a history of strong public policy in New Jersey in favor of settlements. *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 572 (2011); *Univ. of Mass. Mem'l Med. Ctr. v. Christodoulou*, 180 N.J. 334, 351 (2004); *Bistricer v. Bistricer*, 231 N.J. Super.143, 147 (Ch. Div. 1987).

*Central Motor Parts*, involves a situation similar to the instant case, in that in *Central Motor Parts*: (1) a finding of independent liability on the part of one party was necessary to determine a right to indemnification, and (2) such a determination would amount to re-litigating the underlying action. *See generally Cent. Motor Parts Corp.*, 251 N.J. Super 34 (Law Div. 1989). Regarding the determination of liability, the Court in *Central Motor Parts* stated that "[s]uch a finding requires a full evidentiary determination" which "is doubly burdensome and defeats the policy objectives encouraging settlements." *Id.* at 43. As in *Central Motor Parts*, the settlement entered into in the instant case was "a fair agreement duly entered into to resolve pending and burdensome litigation." *Id.* (quoting *Bistricer*, 231 N.J. Super. at 151). Also, the court stated that to make a conclusion regarding liability would "resuscitate[] the prospect of complex and costly litigation." *Id.* The same is true in the instant matter regarding both issues.

## V.    CONCLUSION

For the reasons set forth above, Carquest's Motion is **DENIED** TMC/Tasco's Motion is **DENIED**, and Voltec's Motion is **GRANTED** in part and **DENIED** in part as **MOOT**.

s/Susan D. Wigenton, U.S.D.J.

13

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties